## JOHN C. SMITH v. WILLIAM CÓUNTRYMAN.

If new matter set up in an answer as a defense is sham, or irrelevant, it is the duty of the plaintiff to move, on notice, to strike it out. If the new matter does not, upon its face, constitute a defense, the plaintiff should demur to it. He can not move, at the trial, to strike it out, on the ground that the facts stated do not constitute a valid defense to the action.

A judge has no power to strike out pleadings, on the trial. All objections to the pleadings should be decided before the circuit.

An executory contract for the sale of personal property, entered into upon false and fraudulent representations made by the purchaser, to induce the vendor to make the same, and upon the truth of which representations the latter relied, cannot be enforced. Whatever facts would enable a party to avoid a contract, are equally available to enable him to defeat one sought to be enforced against him.

Upon a negotiation between C. and W. for the sale by C. of his crop of hops, W., to induce C. to sell him the hops, represented that he had purchased E.'s hops for the price óf twelve and one-half cents per pound. C. was ignorant of the price of hops, and was reluctant to sell; but relying upon this representation of W., and believing the same to be true, and having confidence in the prudence and judgment of E., he entered into an agreement with W. to sell him his hops for twelve and one-half cents per pound. The statement as to the purchase of E.'s hops by W. being untrue; *Held*, that C. was at liberty to refuse to fulfill the contract, on discovering the fraud, and that the law would not subject him to damages for the breach.

*Held*, also, that in an action against C. for a breach of his agreement to deliver the hops, evidence of his *belief* in the representations made by W., as to his having purchased E.'s hops, and that he entered into the contract relying on that representation, was properly received, and that the court did not err in refusing to strike out such evidence as being immaterial and constituting no defense.

Any representation that affects the price of an article, in regard to which one party places confidence in the other, will, if relied on, and is false, and the party trusting to the representation is injured, render the contract void. Per MULLIN, J.

A vendor of property may put upon the purchaser the responsibility of informing him correctly, as to the market value, or any other fact known to him, affecting the market price of the property, and if the purchaser answers untruly the purchase will be void, by reason of the fraud. The purchaser is not bound to answer, in such a case; but if he does, he is bound to speak the truth. Per MULLIN, J.

*Appeal from a judgment of the Supreme Court in the fourth judicial district.*

THE action is to recover damages for the breach of a contract to deliver a quantity of hops. The defendant agreed in writing with one H. R. Wood to sell and deliver to him, at the railroad depot at Fort Plain, all his crop of hops for the year 1860, put up in bales and delivered in good merchantable order, on the 20th of October in that year. Wood was to receive and pay for the hops twelve and a half cents per pound. The defendant's crop that year amounted to 3,409 pounds. Wood was ready and willing to receive and pay for them at the time and place agreed upon. The defendant neglected or refused to deliver them. Such hops were proved to have been worth, at the time they were to be delivered, thirty cents a pound; and the difference between the contract price agreed to be paid for them and the value at the time and place of delivery was $596.57, and which the plaintiff claimed as damages for the breach of the contract. The contract had been assigned to the plaintiff. The defendant set up, by way of defense, in his second answer, that, at the time of making the contract, he was ignorant of the price of hops and reluctant to make the agreement. That Wood represented to him that he, Wood, had purchased the crop of one Henry Elwood, a large and experienced hop-grower, at twelve and one-half cents per pound, and that he, the defendant, believing such statement, and having faith and confidence in the sagacity, prudence, and judgment of Elwood, entered into such agreement. He then alleges that the statement of Wood that he had purchased Elwood's hops was false and fraudulent; was made to deceive and defraud the defendant; and that, by such false and fraudulent representation, he, the defendant, was actually deceived and induced to enter into such agreement, which was very disadvantageous, as hops were then worth more than twelve and one-half cents per pound; and that, immediately thereafter, there was a great rise in the price of hops. On the

trial,.the agreement was proved; the price of hops, at the time the delivery was to be made by the terms of the agreement, was twenty-eight to thirty cents per pound. The agreement bore date August 14th. The price of hops on that day was shown to be from twelve to twelve and a half cents per pound. Upon this proof the plaintiff rested his case, and the defendant moved for a non-suit, which was denied by the court, and the defendant's counsel excepted. The plaintiff then moved to strike out the second ground of defense, above stated, for the reasons that the facts therein stated did not constitute a fraud; and that, if the representations were made as set forth in the answer, they were immaterial and constituted no defense to the action. The court denied the motion, and the plaintiff excepted. The defendant was then permitted to prove, and did prove, the facts as set forth in the answer, except the averment therein that, at the time of the execution of the agreement, hops were worth more than twelve and one-half cents per pound, by himself and other witnesses, named Miller and Cronkhite. And it also appeared from the testimony that, at the time of the negotiation, Wood showed the defendant his book, wherein he had entered several contracts made by him with hop-growers for their crops at twelve and one-half cents per pound. That Elwood's name was not on the book among those with whom contracts had been made. Wood was also sworn, and testified that he told the defendant that he expected to purchase Elwood's crop of hops; and it was admitted on the trial that Wood had not purchased any hops of Elwood. The plaintiff moved to strike out the evidence given by the defendant and Miller and Cronkhite, so far as the same related to the representations made by Wood of the purchase of Elwood's hops, as being immaterial and constituting no defense to the action; which motion was denied, and the plaintiff excepted. The defendant had testified that he had said to Wood, if, what he, Wood, had said was so, in regard to Elwood's hops, he would enter into the contract with him.

42

The defendant then added: "I did believe the representa
tion made that he had purchased Elwood's hops." Thi
answer was objected to by the plaintiff's ccunsel a
improper and immaterial; but the objection was overruled,
and the plaintiff's counsel excepted. The defendant then
testified, without objection, that he entered into the contract
relying on that representation, and that, soon afterwards, he
ascertained its falsity. The jury found a verdict for th'
defendant, and the judgment entered therein was affirmed
at the general term. The three exceptions taken by the
plaintiff on the trial to the rulings of the court, present the
only questions arising for the consideration of this court
upon this appeal.

*A. Hees*, for the appellant.

I. The court erred in refusing to strike out the evidence
of the defendant, and Miller and Cronkhite, as well as refu-
sing to strike out the second defense set forth in the
defendant's answer, for the reason that neither of them
constitute or establish a fraud, or constitute a defense to
the action.

1. Admitting the representations testified to by the
defendant Countryman and Miller, that he had purchased
Ellwood's hops at twelve and a-half cents per pound, it
was simply the declaration what a third person had done,
which was no reason why he should do the same thing, and
therefore does not constitute a fraud, or fraudulent repre-
sentation to avoid a contract. Chancellor KENT, in his
Commentaries (vol. 2, 8th ed. p. 634), says: "The cases
have gone so far as to hold that if the seller should even
falsely affirm that a particular sum had been bid by others
for the property, by which means the purchaser was induced
to buy, and was deceived as to the value, no relief was to
be afforded; for the buyer should have informed himself,
from proper sources, of the value; and it was his own folly
to repose on such assertions, made by a person whose inte-

rest might so readily prompt him to invest the property with exaggerated value. *Emptor emit quam minimo potest; venditor vendit quam maximo potest.*" On page 635: "The same principle was laid down in a late case in the K. B., where it was held that a false representation by the buyer in a matter merely *gratis dictum*, in respect to which the buyer was under no legal pledge or obligation to the seller for the precise accuracy of his statement, and upon which it was the seller's own indiscretion to rely, was no ground of action." (See also *Vernon* v. *Keys*, 12 East Rep. 632; See also Story's Equity Jurisprudence, 4th edition, § 199; *Davis* v. *Meeker*, 5 John. R. 354.) Fraud is a question of fact for a jury, where there is any evidence tending to establish it. But whether the evidence tends to establish fraud or not, is always a question of law for the court. (*Erwin* v. *Voorhees*, 26 Barb. 127.) The authority relied upon by the defendant, on the trial, against striking out the evidence of the defendant, Miller and Cronkhite, will be found in 20th N. Y. R. 32 (*Valton et al.* v. *The National Fund Life Assurance Company*). The note is as follows: "A policy of insurance is avoided by a fraudulent representation in respect to a fact not material to the risk, if, in the judgment of the insurer, it be material in respect to inducements to undertake the risk." It was upon this authority the learned judge who tried the cause denied the motion. It is insisted that the law of contracts of insurance and contracts of sale is different, and rests on different principles. The parties do not deal, in that instance, on the presumption of equal knowledge and vigilance as to the subject matter of the contract, and hence a different rule of law prevails. The insurer is essentially passive, and is known to act, and professes to act, upon the information of the assured. In an insurance contract, the special acts, as Lord MANSFIELD has observed (*Carter* v. *Boehm*, 3 Burr. R. 1905), upon which the contingent chance is to be computed, lie most commonly within the knowledge of the insured only. "The underwriter trusts to his representations," and proceeds

upon the confidence that he does not keep back any circumstance within his knowledge. (*Lindenau* v. *Desbrough*, 8 Barnw. & Cres. 386.) Though the suppression should happen through a mistake, without any fraudulent intent, the policy is void. The contract of insurance is formed upon principles peculiar to itself, and the common law maxim, *caveat emptor*, has no application. (See note, 2d Kent's Com. 8th ed., p. 637; See also 3d Kent's Com., 8th ed., 351 to 363—the law upon contract of insurance.)

2. The false and fraudulent representations claimed to have been made by Wood, are immaterial, and constituted no fraud or defense to the action, as the evidence given on the part of the plaintiff shows that twelve and a half cents was the market price, and the highest price paid for hops by any one at the time the contract was made; and the representations made, as insisted upon by the defendant, that he had purchased Ellwood's hops at twelve and a half cents, that being the market price, and the highest price paid, and no evidence being offered or introduced by the defendant showing that hops were worth more than twelve and a half cents, worked no injury to the defendant, as he was receiving the highest market price for his hops.

3. The representation of Mr. Wood that he had purchased Ellwood's hops at the same price that he agreed to pay the defendant (to wit: twelve and a half cents per pound), was not such a false and fraudulent representation as to avoid the contract, as there was no misrepresentation as to market value or price paid. (See cases above cited.)

4. There can be no fraud without damage, and the evidence shows the defendant was receiving by the contract the highest market price at the time the contract was made, and consequently he sustained no injury. In the case of *Harris* v. *Ransom* (24 Miss. Rep. 504), the court say: "A party seeking to avoid a contract upon the ground of fraud, must not only prove the fraud, but that he has sustained

injury from it." Again, COKE, J., in 3 Bulstrode's Reports, 952, says: "Fraud without damage, or damage without fraud, gives no cause of action." (See Note C, 2 Kent's Com. 8th ed. 638.)

5. The defendant can not now avail himself of the false representations made by Wood as to the purchase of Ell-wood's hops; as the proof shows Ellwood was a near neighbor to the defendant, and he was bound to exercise ordinary prudence and discretion. The means were within his control to ascertain the truth or falsity of the representations; and if he failed to acquire such information, the failure is attributable to his own neglect and want of ordinary prudence as to those representations. (*Davis* v. *Sims & Bates*, Lalor's Sup. to Hill & Denio, 235.) In such a case the rule, *caveat emptor*, emphatically applies. (*Starr* v. *Bennett*, 5 Hill, 303, 304, 305 and 306; *White* v. *Seaver*, 25 Barb. 242.) In the case of *Van Epps* v. *Harrison* (5 Hill, 67), which was for a false representation as to the situation of a farm, within ten hours' ride of the plaintiff, Chief Justice BRONSON says: "It will seem marvelous, if not wholly incredible, to those who did not live in the years 1835 and 1836, that men should purchase lands within ten hours' ride of their residence, and agree to pay $32,000, without ever having taken the trouble to look at the property." And again, on the same page, he says: "He trusted to the representations of the plaintiff in relation to the condition of the property, and the only question is whether the defendant must charge the loss upon his own folly, &c. The credulity of the defendant furnishes but a poor excuse for the falsehood and fraud of the plaintiff, and he will have no just cause for complaint if he is held responsible for his misconduct." The same doctrine is held in *White* v. *Seaver* (25 Barb. 235, 242); see also, *Tallman* v. *Green* (3 Sand. R. 441 and 442.)

II. The court erred in admitting the evidence of the defendant: "I did believe the representations made that he had purchased Ellwood's hops." (*Rich* v. *Jakway*,

(18 Barb. p. 357; *Murray* v. *Bethune* 1 Wend. 191, see page 196.)

III. The defendant alleges, in his answer "that, by such false and fraudulent representations, he was actually deceived and induced to enter into said agreement, which was a very disadvantageous one, as hops were *then worth more than twelve and a half cents per pound.*

1. This allegation would seem to be the gist of the whole answer. No evidence was given by the defendant to prove the truth of this portion of the answer; but, on the contrary, the sum of twelve and a half cents, the price agreed upon, was the highest market price; consequently, the agreement was not a disadvantageous one, as alleged in the answer, and this is the real injury complained of by the defendant.

2. The defendant, in his answer, also alleges: "That he relied upon the representations of Wood that he had purchased Ellwood's hops, who was a large and experienced hop-grower of that town, and that he had faith and confidence in the sagacity, prudence and judgment of said Ellwood, and was, therefore, induced to enter into said agreement. This allegation is unsupported by any evidence given by the defendant. On the direct examination of the defendant, he testifies: "Ellwood had grown hops one year." In his cross-examination he testifies: "In 1860 it was the first year that Ellwood grew hops"—the same year the contract in this action was made. The defendant testified: "If Mr. Ellwood had sold his hops for six cents, I think I would have sold mine; if he had sold his hops for three cents, I think I would have sold mine." It is submitted that the defendant presumes much upon the credulity of the court when he alleges that he relied upon the skill, prudence and judgment of a man who never had, at the time the contract was made, grown a single pound of hops, and there is no evidence that Ellwood ever bought or sold any hops whatever. The defendant himself testified that he (the defendant) had been a hop-grower for six

years, and was well qualified to judge of the market value
of hops; and that Ellwood's skill and prudence, which he
claims he relied upon, in that respect was no better than
that of any other ordinary individual, who had never grown
or bought or sold any hops.

IV. His Honor, Justice JAMES, in his opinion to sustain
the judgment below, says: "The jury having found for the
defendant, the questions of fact presented by the issues
must be regarded as settled in favor of the defendant."
His honor passes over, without remark, that those very
issues were given to the jury under exceptions taken by
the plaintiff.

1. On motion of the plaintiff to strike out the second
defense set up in the defendant's answer, for the reaso:
that the facts therein set forth do not constitute a fraud.

2. That if the representations were made as set forth in
the defendant's answer, they are immaterial, and constitute
no defense to the action.

3. In admitting the evidence of the defendant, "'
entered into the contract, relying on that representation;'
" I did believe the representation made, that he had pur
chased Ellwood's hops," which was objected to by the
plaintiff's counsel, and overruled by the court, to which
ruling the plaintiff, by his counsel, then and there excepted.
Justice JAMES, in his opinion, has fallen into another error.
He says:  " The defendant at first declined, and to induce
him to contract, Wood asserted that one Ellwood, an exten-
sive hop grower, and a person in whose judgment and
opinion Wood knew the defendant had great confidence,
had contracted with him," &c.  The case shows an entirely
different state of facts.  Ellwood was not an extensive hop
grower; that was the first year he ever grew hops, and so
the defendant testified.  The case shows Wood was a
stranger to the defendant, and also a stranger to Ellwood,
nor did Wood know that the defendant knew Ellwood, or
that he, Ellwood, was a near neighbor to the defendant,
until the time of making the contract.  The defendant

examined Wood's book containing the names of the persons with whom he had purchased hops, and with the prices; so the defendant testified. His honor cites the case of *Watson* v. *Palson* (7 S. & E. 585), as authority to show "if a man tell an untruth, knowing it to be such, who acts accordingly, and thereby sustains damage, the party making the false statement is liable for the deceit, even though he intended no fraud in making the representation." Also the case of *Pollhill* v. *Walter* (3 B. & Ad. 114), holding the same doctrine. That principle is so familiar that it hardly needed a reference to those authorities, but, unfortunately for his honor, those authorities do not reach the case in hand. There was no misrepresentation as to price; the defendant got the highest market price for his hops, and consequently sustained no damage.

*S. & R. Earl*, for the respondent.

I. The evidence, as to the defendant's belief in the truth of Wood's representation that he had purchased Ellwood's hops, objected to by plaintiff, was competent, and the exception was not well taken. (*Seymour* v. *Wilson*, 4 Kernan, 567; *Pope* v. *Hart*, 35 Barb. 630; *Bush* v. *Lathrop*, 22 N. Y. 549, 550; *Griffin* v. *Marquardt*, 21 N. Y. 121; *Forbes* v. *Waller*, 25 N. Y. 430.)

II. The exceptions to the refusal of the court to strike out the second defense in the answer were not well taken.

1. A party cannot properly, at the circuit, without any prior notice, move to strike out any portion of a pleading. This defense was not sham or irrelevant within the meaning of section 152 of the code; and, if it was irrelevant, the motion to strike it out should have been brought on on notice. The remedy of plaintiff, if the alleged fraud constituted no defense, was to demur, under section 153 of the code. The plaintiff not having made such motion nor demurred, the pleading must stand as part of the record.

2. The evidence of the defendant and of Miller and

Cronkhite, which the plaintiff moved to strike out, was taken without objection. Hence the court had no right to strike it out. If the court had the right, it was not bound to do it; it was a matter of discretion. (*Hall* v. *Earnest*, 36 Barb. 585.) Hence we submit that none of the plaintiff's exceptions were well taken; and, as this court cannot look into the evidence to see if the verdict was warranted by it, the judgment must be affirmed.

III. But if the main question is here for review, then we submit that the fraud alleged and proved was such as to avoid the contract and constitute a defense to the action.

1. Frauds are of infinite variety, and it is impossible to lay down any general rule as to what representations will avoid a contract, which will cover all cases. Each case will depend upon its own circumstances. (2 Parsons on Contracts, 266; Chitty on Contracts, 681.)

2. For the same reason it is impossible to reconcile the decided cases involving questions of fraud and the numerous dicta on the subject of fraud that are to be found in the books.

3. The general rule, founded in natural justice and equity, is that a party has the right to avoid a disadvantageous executory contract, which he has been induced to enter into by the false and fraudulent representations of the other party. To this rule there are some exceptions.

(*a.*) It is said that the representations must be material. This is undoubtedly true. But all representations must be deemed material upon which a party relied and by which he was induced to enter into the contract; and whether the representations were material or not is generally a question of fact for the jury.

(*b.*) It is said that the representations must be such as the party had the right to rely upon, and in which he had the right to repose confidence. This must depend upon the circumstances of each case.

(*c.*) The representations must not be as to a fact that is equally open to the observation and inspection of both

parties; for, as to such facts, it is said that both parties are presumed to act upon their own judgment and information. Under this exception would come representations as to defects open to ordinary observation and inspection or discoverable by ordinary prudence, and as to market value in cases where the knowledge of it is equally accessible to both parties.

4. In this case the defendant brings himself within the rule qualified by all these exceptions.

(*a.*) The representations were false.

(*b.*) They were made with intent to deceive and defraud.

(*c.*) They were material, inasmuch as they were relied upon and induced the defendant to sign the contract. As he was not posted as to the price of hops and the hop trade, he had the right to rely upon the judgment and skill of another person whom he believed to be posted. They were representations, in one sense, affecting the value of hops and the chances of the defendant to make a favorable sale.

(*d.*) The defendant had the right to rely upon the representations because they were as to a fact peculiarly within the knowledge of the person making them, and he had the right to repose faith and confidence in him, because he asked him for the truth and informed him that he contracted relying upon what he said.

(*e.*) The representations were of a fact not equally known to both parties. Neither did both parties have equal facilities for learning or knowing the existence of the fact. The truth could only be learned from Wood or from Ellwood. It was not a fact like market value ordinarily accessible to all. It was a fact which the defendant could only learn by inquiry, and he exercised all the prudence and foresight which the law requires, by inquiring of and relying upon Wood. He might not have been able to learn the truth elsewhere. Besides, Wood refused him time to inquire elsewhere, and thus compelled him to rely upon his representations as to the fact.

(*f.*) The representations threw the defendant off from his guard, and prevented him from making inquiries, as to the price and value of hops, which he otherwise would have made.

(*g.*) The defendant was not in fault for not ascertaining the falsity of Wood's representations before he contracted, because Wood, in order to perpetrate his fraud more effectually, refused to give him an opportunity to see Ellwood.

(*h.*) Suppose Wood had falsely said that he had just received a telegram that the market price for hops in New York was twelve and one-half cents per pound only, when in fact it was fifteen cents; or, suppose he had falsely said that the hop quotations in the New York papers for that day, which the defendant had not seen, were twelve and one-half cents per pound, when, in fact they were fifteen cents, and he had refused to give the defendant time to learn the truth as to his representations, and the defendant had been, by such representations, induced to enter into a contract at twelve and one-half cents, could it be said that such representations were not material, or that the defendant had no right to repose confidence in them?

(*i.*) The defendant was damaged by the representations, as he was induced by them to enter into a very disadvantageous contract. It matters not that he was to have the market value of hops at the time he signed the contract, as the contract, if valid, deprived him of the market value at the time he was to deliver them.

5. Hence we say that the court below, in holding that the misrepresentations complained of constituted a legal fraud which rendered the contract void, violated no principle of public policy or rule of law. (Chitty on Contracts; 1 Parsons on Contracts, 461; 2 Parsons on Contracts, 264, *et seq.;* Story's Eq. Ju. secs. 192, 200; *Risney* v. *Shelby*, 1 Salkeld, 211; *Palsey* v. *Freeman*, 3 T. R. 57; *Watson* v. *Poulson*, 7 Eng. Law and Eq. 585; *Laidlow* v. *Organ*, 2 Wheaton, 123; *Benton* v. *Pratt*, 2 Wend. 385; *Sanford* v. *Handy*, 23 Wend. 259, 268; *Starr* v. *Bennett*, 5 Hill,

303; *Taylor* v. *Fleet*, 1 Barb. 471; *Bench* v. *Sheldon*,
14 Barb. 66; *Newbery* v. *Garland*, 31 Barb. 121, 130;
*White* v. *Merritt*, 3 Seld. 352, 356; *Bronson* v. *Wiman*,
4 Seld. 182; *Haight* v. *Hayt*, 19 N. Y. 464; *Valton* v. *The
National, &c. Assurance Co.*, 20 N. Y. 32, S. C. 17 Abb.
268; *Hill* v. *Bush*, 19 Arkansas, 522; *Harwood* v. *Gould*,
28 Vt. 524; *Ives* v. *Carter*, 24 Conn. 392; *Pennock* v. *Fil-
ford*, 17 Penn. 456; *Oldham* v. *Bently*, 6 B. Monroe, 428;
*Weatherford* v. *Fishbeck*, 3 Scam. 170; *Medbury* v. *Wat-
son*, 6 Metcalf, 246.) It is submitted, therefore, that the
judgment should be affirmed.

DAVIES, J. If the new matter set up by the defendant,
as constituting a defense, was sham or irrelevant, it was
the duty of the plaintiff to have moved on notice to strike
it out. (Code, § 152.) If the new matter did not, upon
its face, constitute a defense, it was the duty of the plain-
tiff to have demurred to it. (Code, § 153.) The practice
resorted to in this case, to correct the pleadings by motion
at the trial is not warranted by the code, and should not
be encouraged. The plaintiff, in substance, by his motion
to strike out the second ground of defense, admitted the
allegations of the answer, and the question was presented
to the court in the same form as if he had demurred to the
answer. A moment's consideration will show how incon-
gruous and inconvenient it is to reserve questions of law
for argument and decision at the circuit. But assuming
the question was properly raised there, then it is to be
considered whether the new matter, set up in the answer,
upon its face constituted a defense to the action. And the
question to be decided is in substance the same, whether it
is put on the motion to strike out that defense, or upon the
motion to strike out the testimony which was given to
establish it. In the first place it is to be borne in mind
that the plaintiff in this action is seeking to enforce an
executory contract, made and entered into by the defend-
ant, as conceded by him, upon false and fraudulent repre-

sentations made by the plaintiff's assignor, to induce him to make the same, and upon which it was admitted he, the defendant, relied. The statement of the proposition would seem sufficient to suggest the answer which the law should make. In the aspect we are now regarding the case, we are to take the statements of the defendant's answer as true. They are that he was ignorant of the price of hops, and was reluctant to make the agreement with Wood, the plaintiff's assignor; that Wood, to induce the defendant to sell him his hops and enter into the agreement, represented that he had purchased the hops of one Ellwood, a large and experienced hop grower, for the price of twelve and one-half cents per pound; and that, relying upon such representation, and believing the truth thereof, and having confidence in the prudence and judgment of Ellwood, the defendant entered into the agreement. That hops were, at that time, worth more than twelve and one-half cents per pound; that such representations were false and fraudulent, and made with the intent to deceive and defraud the defendant. It is now urged that it was the folly of the defendant that he relied upon these representations of Wood; that it was his duty to have made inquiry of Ellwood, to ascertain the truth of the representations, before he entered into the contract. In other words, the defendant should have assumed that Wood's statements, if not untrue, were at least doubtful, and that he is to suffer for having given them credence, while the party knowingly making the false representations is to reap the fruits of his fraud, because the party dealing with him did not distrust him. It was well observed by the court, in *Van Epps* v. *Harrison* (5 Hill, 63), that the credulity of the defendant furnishes but a poor excuse for the falsehood and fraud of the plaintiff, and the latter will have no just ground of complaint if he is held responsible for his misconduct. That was an action upon a bond given upon a sale of land by the plaintiff to the defendant, and as a defense to the action the defendant set up that the plaintiff falsely and

fraudulently represented to him that he had just purchased and paid $32,000 for the land, when in truth he had paid but $16,000. And the court was of the opinion that the false affirmation concerning the price paid for the land furnished a good defense to the action.

It is true, as contended for by the counsel for the appellant, that the fraud which will vitiate a contract must be material, and that it must relate distinctly and directly to the contract, and must affect its very essence and substance. Parsons, in his work on contracts, (2 Parsons, 267,) observes that there is no positive standard by which to determine whether the fraud be thus material or not, but that no better rule for deciding the question can be given than this: "If the fraud be such that, had it not been practised, the contract would not have been made or the transaction completed, then it is material to it." Applying this rule to the case at bar, in the aspect we are now considering it, and the materiality of the representation is placed beyond all question. The defendant says: that, being ignorant himself of the value of hops, and knowing the prudence and judgment of Ellwood, he, in reliance on the representation that Ellwood had sold his hops to Wood at the price named, entered into the contract to sell his hops to him at the same price. Whatever facts would enable a party to avoid a contract, are equally available to enable him to defeat one sought to be enforced against him. Could this defendant, therefore, have sought the aid of a court of equity, upon the facts stated in his answer, to set aside this contract? The authorities are abundant to show that he could. In *Daggett* v. *Emerson* (3 Story's Rep. 733), Mr. Justice STORY states the principles by which courts of equity can be governed in such cases in the following elegant and forcible terms, and these observations have peculiar force and significance as applicable to the present case. He says: "It is equally promotive of sound morals, fair dealing and public justice and policy that every vendor should distinctly comprehend, not only that good faith should

reign over all his conduct in relation to the sale, but that there should be the most scrupulous good faith, an exalted honesty, or, as it is often felicitously expressed, *uberrima fides,* in every representation made by him as an inducement to the sale. He should literally, in his representations, tell the truth, the whole truth, and nothing but the truth. If his representation is false in any one substantial circumstance going to the inducement or essence of the bargain, and the vendee is thereby misled, the sale is voidable, and it is usually immaterial whether the representation be wilfully and designedly false, or ignorantly and negligently untrue. The vendor acts at his peril, and is bound by every syllable he utters or proclaims, or knowingly impresses upon the vendee, as a true or decisive motive for the bargain." In *Taylor* v. *Fleet* (1 Barb. 471), the vendee sought the aid of a court of equity to set aside a conveyance and sale of real estate on the ground that the vendor had made a representation, in regard to the land, which was untrue; and the court held that, the vendee having ascertained that the representation was untrue, had the right to rescind the contract. That, whatever may have been the motive of the vendor in making an erroneous representation respecting the land about to be sold to him, it is enough to entitle the purchaser to relief; that there was a misrepresentation of a matter of fact, material to the subject of negotiation, and which constituted the very basis of the contract. The court said: "The representation being untrue and influential, vitiated the transaction, whether such representation was wilfully and designedly false or ignorantly or negligently untrue." (See also opinion of Mr. Justice WOODBURY, 9 Law Rep. 160, *Warner* v. *Daniels;* Story's Eq. Juris. §§ 192, 193; *Hough* v. *Richardson,* 3 Story's Rep. 659; *Bennett* v. *Judson,* 21 N. Y. 238.)

In *Neville* v. *Wilkinson* (1 Bro. Ch. Rep. 546), Lord Chancellor THURLOW said: "It has been said here is no evidence of actual fraud on R., but only a combination to

defraud him.   A court of justice would make itself ridiculous if it permitted such a distinction.   Misrepresentation of circumstances is admitted, and there is positively a deception;" and he added:   "If a man, upon a treaty for any contract, will make a false representation by means of which he puts the party bargaining under a mistake upon the terms of the bargain, it is a fraud.   It misleads the party contracting, on the subject of the contract."   In harmony with the doctrine of these cases is the principle laid down by this court in the case of *Valton* v. *National Fund Life Insurance Co.* (20 N. Y. 32).   It was there decided that fraudulent representations made by the assured to the insurer, upon his application for a policy, though not material to the risk, yet material in the judgment of the insurer, and which induced him to take the risk, would avoid the policy.   And this court held that a misrepresentation, although it did not affect the nature of the risk, yet was a fraud, because it induced a confidence, without which the party would not have acted.   This principle covers the whole ground in controversy in the present action, and if applicable to the present case, is decisive of it.   But it is urged, by the appellant's counsel, that the law of contracts of insurance and contracts of sale are different, and rest on different principles.   That the parties do not deal, in the former case, on the presumption of equal knowledge and vigilance as to the subject matter of the contract, and that hence a different rule of law prevails.   It is true that in contracts of insurance all representations material to the risk, if untrue, avoid the policy, but representations not material rest on the ground of fraud, and therefore vitiate the policy on that ground.   This distinction was urged upon the attention of the court in the case of *Moens* v. *Heyworth* (10 Mees. & Welsby, 147).   In that case the question was whether a contract for the sale of coffee, which was represented to be invoiced to the seller, was void, from the fact that such representation was untrue, and it was held that it was.   Lord ABINGER,

Chief Baron, said: "The fraud which vitiates a contract, and gives the party a right to recover, does not in all cases necessarily imply moral turpitude. There may be a mis-representation as to the facts stated in the contract, all the circumstances in which the party may believe to be true. In policies of insurance, for instance, if an insurer makes a misrepresentation, it vitiates the contract. Such contracts, it is true, are of a peculiar nature, and have relation as well to the rights of the parties as to the event. In the case of a contract for the sale of a public house, if the seller represent, by mistake, that the house realized more than in fact it did, he would be defrauding the purchaser and deceiving him, but that might arise from his not having kept proper books, or from non-attention to his affairs, yet as soon as the other party discovers it, an action may be maintained for the loss consequent upon such misrepresentation, inasmuch as he was thereby induced to give more than the house was worth;" and he further observed that " the question of fact whether there was fraud or not ought to be decided by the jury from the circumstances of the case." PARKE, Baron, remarked: " The case of a policy of insurance does not appear to me to be analogous to the present; those instruments are made upon an implied contract between the parties that every thing material known to the assured should be disclosed by them. This is the basis on which the contract proceeds, and it is material to see that it is not obtained by means of untrue representation or concealment in any respect." " In this case," he says, " the plaintiffs must prove a representation by words or acts of that as true which was known to the defendants to be untrue, as in the cases of *Polhill* v. *Walter* (3 B. & Adol. 114), and *Foster* v. *Charles* (6 Bing. 696). In the same case Lord TENTERDEN laid down the rule that it is not necessary to prove that the false representation was made from a corrupt motive of gain to the party making it, or a wicked motive of injury to the other party; it was enough if a representation is made, which the party making

43

it knows to be untrue, and which is intended .by him, or which, from the mode in which it is made, is calculated to induce another to act, on the faith of it, in such a way that he may incur damage, and that damage is actually incurred." In *Foster* v. *Charles* the same doctrine is reiterated, and PARK, J., quotes, with approbation, the remark of CHAMBRE, J., in *Tripp* v. *Lee* (3 Bos. & P. 371), that it would be an absurdity in law to hold that if a man draws another into a snare, the party suffering should have no remedy by action.

It is perfectly clear, therefore, from principle and authority, that if the plaintiff had demurred to the second ground of defense contained in the defendant's answer, as not sufficient in law, the demurrer would have been overruled, and judgment given for the defendant. The judge therefore properly refused to strike out the second ground of defense as stated in the answer. He also properly refused to strike out the testimony which the defendant had adduced to sustain the answer. Such testimony proved every material fact contained in the answer, except the allegation that hops were at the time the defendant made the contract worth more than twelve and a half cents per pound. Such fact had no materiality in excusing the plaintiff's assignor, from the fraud practised upon the defendant. *Non constat*, that the defendant would have entered into this contract if he had known that circumstance. The question here is, whether a contract obtained from a person by fraud and falsehood can be enforced against him by the party procuring it. I think clearly it cannot. It is undeniable that if it could have been enforced, if the defendant had fulfilled it, he would sustain thereby great damage; and it is no answer, for the plaintiff to say, that the defendant might on that day have sold his hops either to Wood, or some one else, for the same price, if the fraud had not been practised. The defendant was at liberty to refuse to fulfil the contract on his part, as soon as he ascertained the fraud practised upon him, and the law will not subject him to the damages

which the plaintiff or his assignor may have sustained, from their inability to realize the fruits of this fraudulent act. The motion to strike out the defendant's testimony was therefore properly denied.

The evidence of the belief of the defendant in the representation made by Wood was perfectly proper. It cannot be permitted to the plaintiff to object that the defendant credited the statement of his assignor. The defendant was not to assume it was untrue, and the law would have assumed that he gave credit to the representation whether he had so testified to it or not. But this objection is wholly immaterial, as the defendant testified, without objection, that he entered into the contract relying on that representation, namely: the representation that he, Wood, had purchased Ellwood's hops. This shows beyond all controversy that he believed the representations to be true, and his statement that he so believed it was of no importance. The judgment appealed from should be affirmed.

MULLIN, J. The plaintiff's counsel intended to raise on the trial the question whether, assuming the representations to have been made as alleged in the answer, they furnished any legal ground for declaring the sale void by reason of the vendee's fraudulent representations? But I think he has wholly failed to present any such question.

There are but three exceptions in the case. The first is to the denial of the plaintiff's motion to strike out the second defense, because, 1st. The facts therein stated do not constitute fraud; and, 2d. The representations, if made as set forth in the answer, were immaterial and constituted no defense to the action. The second exception is to the admission of the evidence, on the part of the defendant, whether he believed the representations of the vendee that he had purchased Ellwood's hops? The third was the exception to the refusal of the court to strike out the evidence of the defendant and the witness Cronkhite, so far

as the same relates to the representations made by Wood of the purchase of Ellwood's hops, as being immaterial and constituting no defense to the action.

I know of no authority authorizing a plaintiff to move at the trial to strike out an answer or defense. When parties go down to trial, it is the duty of the court to try the issues made by the parties. If the answer presents no defense, the plaintiff may demur or move to strike out as sham or irrelevant. (Code, § 152, 154.) This motion must be made before the cause is brought on for trial, for the obvious reason that it must be made before the case can be said to be at issue; and, until after issue joined, the case cannot be noticed for trial.

It is competent for a plaintiff to lie by without demurring or moving to strike out, and on the trial object to the evidence offered in support of the answer or defense as not constituting a defense. And the court may in its discretion, reject it, or it may refuse to do so and leave the party to have recourse to some other way of presenting the question.

Under the former system the judge at *nisi prius* had nothing to do with the pleadings. His duty was to try the issues presented by the circuit roll, and it was for the court in banc to dispose of the questions of law arising from improper or defective pleadings. The circuit judge had not power to allow even an amendment of the pleadings.

The powers of the judge at circuit are now much more extensive, he being authorized to allow amendments as fully as the court might do at general or special term, and superadded to these powers a special term is held by the same judge with the circuit. But extensive as his powers are, I think he has not the power on the trial to strike out pleadings. The party whose pleading is proposed to be stricken out, has the right to require that all objections to the pleadings shall be decided before the circuit, so that he may know what he is called on to prove to support his own case and the causes of action or defense on which his adversary relies.

Judge BRONSON, in *Reynolds* v. *Lounsbury* (6 Hill, 534), says: "A fault in the pleadings is not a proper ground for tendering a bill of exceptions. After the defendant had omitted to demur to the declaration, he could only take an objection to its sufficiency by motion in arrest of judgment or a writ of error."

It was said by BARCULO, J., in *Fox* v. *Hunt* (8 How. Pr. R. 12), and by CADY, J., in *Myatt* v. *Saratoga M. Ins. Co.* (9 How. Pr. R. 488), and by HARRIS, J., in *Richtmyer* v. *Haskins* (9 id. 481), that it was the correct practice at the circuit to lay out of the case all irrelevant allegations and immaterial issues in the case, and if the complaint does not contain a good cause of action, or the answer does not contain a defense, to direct judgment accordingly. I cannot concur with the learned judges, in their views of the practice, without some limitation. Section 148 of the code permits the defendant to raise, at any stage of the action, the objection to the complaint that it does not contain a cause of action. But section 153 of the code permits a demurrer to an answer containing new matter, when upon its face it does not constitute a counterclaim or defense, and the plaintiff may demur to one or more of such defenses or counterclaims, and reply to the residue of the counterclaims.

If the plaintiff omits to demur to an answer or defense, it must, for the purposes of the issue, be deemed sufficient in law, subject to the power of the court to reject evidence which, if received, could not constitute a defense or counterclaim.

Where it was decided that parties were entitled to whatever relief the evidence given on the trial entitled them, without regard to the pleadings, the judge at the circuit would have had the power to conform the pleadings to the proof, aside from the provisions of sections 169 and 173 of the code. The learned judges to whom I have referred seem to have thought the course indicated by them to be not only proper but necessary, inasmuch as the code, as

then construed, did not allow a demurrer to an answer, unless it contained a counterclaim. But since the amendment of section 153, in 1855, and especially since its amendment in 1857, permitting a demurrer to the answer without limitation, except that it should contain new matter, all pretense for interference with the pleadings at the circuit other than conforming them to the proof is at an end, and the rule laid down by BRONSON, Justice, in 6 Hill, 534 (cited *supra*), is the only one that can be followed and not introduce into the practice at the circuit the uncertainty and confusion which prevails in justices' courts, where an unlimited right of amendment exists, and where parties can not know, by the issue joined, what the issue will be that they will be required to try.

All the provisions of the code relating to the amendment and correction of pleadings contemplate that the steps necessary to make them sufficient shall be taken before the trial. This is absolutely necessary to prevent injustice, suspense and disorder in the trial of causes at the circuit.

But the learned judges to whom I have referred have not gone the length of holding that although they may disregard immaterial issues at the circuit they would do it by striking out pleadings.

As I have already shown, it can be legitimately reached by excluding the evidence offered in support of such an issue; but unless the case is a very clear one, the best course is to leave the party to his motion for a new trial, or an appeal.

If, however, the judge at the circuit had the power to strike out an answer or defense for insufficiency on the trial (a position I by no means admit), it would nevertheless rest in discretion, and would not be the subject of review. It would be discretionary, because the application was made at the circuit. The judge might with great propriety say to the counsel, that having omitted to demur, he must try the issue and seek his redress by some appropriate proceeding after verdict.

The exception to the admission of the defendant's evidence that he believed the vendor's statement that he had purchased of Ellwood, does not present any question as to the validity of the sale.

The objection to the evidence was that it was improper and immaterial, and was for the jury to pass upon from the terms of the contract and the conversation that took place. No suggestion was made as to the effect of it upon the validity of the contract. If the counsel designed to present such a question, he most effectually kept it from the attention of the court.

But the plaintiff has presented the question as to the competency of the evidence objected to.

I think it was competent, assuming the defense admissible (which we must do, in the absence of any legal exception to it); the effect of the representation upon the mind of the defendant was one which the jury must pass upon; and, in order to find the sale void, must find on it in favor of the defendant. It was a material fact to be proved; the defendant was a competent witness, and was, therefore, competent to prove it.

The oath of the defendant was by no means conclusive on the jury. They were bound to inquire, 1st. Whether the representation was made by the plaintiff; 2d. Whether it was such an one as would be calculated to impose upon a prudent, careful man; 3d. Whether it was in regard to a matter material to the defendant to know; and, 4th. Whether he believed it or was imposed upon by it. If the defendant should fail in establishing either of these propositions he would fail in his defense.

Under the former practice, when parties could not be witnesses in their own behalf, the jury had to draw their conclusions, as to the effect of the representation, from the materiality of the representation and the effect such a representation would naturally have on the mind of a prudent business man. It was an inference from all the facts. It was an issuable fact, and to be proved in the same way as

other facts in the case. The defendant's admission, whether as a witness or out of court and not under oath, that he did not rely on the representation, would have been conclusive evidence against him; and I know of no reason why, when he is a witness, he may not testify that he did rely on the representation made to him by the purchaser. If he was too credulous, putting faith in a story in itself incredible, or without using that care and caution against imposition that it becomes every prudent man to exercise in dealing with another, he must suffer the consequences of his credulity. Because he may testify that he relied on the representation, will not entitle him to a verdict annulling the sale, unless the circumstances justified his trust.

But if the question was properly before us, whether the representation proved was such an one as being found to have been made, to have been relied upon and to have been untrue, authorized the court and jury to annul the sale, I am of the opinion that the sale was void, and the judgment should be affirmed.

Courts of law and equity are governed by the same principles in giving relief in cases of fraudulent misrepre-sentation. The only difference between them is that a court of equity will sometimes refuse to enforce specific performance of a contract, when a court of law might give damages for a breach of it. Story, in his equity jurisprudence, § 191, thus states the principles that guide a court of equity in giving relief in case of fraudulent representation: "If a representation is made to another person going to deal in a matter of interest upon the faith of that representation, the former shall make that representation good if he knows it to be false. To justify, however, an interposition in such cases, it is not only necessary to establish the fact of misrepresentation, but that it is matter of substance, or important to the interests of the other party, and that it actually does mislead him. For if the misrepresentation was of a trifling or immaterial thing, or if the other party did not trust to it, or was not misled by it, or

if it was vague and inconclusive in its own nature, or if it was upon matter of opinion or fact equally open to the inquiries of both parties, and in regard to which neither could be presumed to trust the other; in these and the like cases there is no reason for a court of equity to inter-fere to grant relief on the ground of fraud."

While courts have endeavored to compel parties to observe the most perfect good faith in their dealings, they have not gone the length of holding that every false state-ment made by one to the other in reference to the quality, condition or value of the property, annuls the contract. Some allowance has been made for the propensity men have to extol the quality, condition or value of that which they propose to sell, and to depreciate that which they desire to buy. Hence statements as to the value of property, its freedom from defects which he knows to exist, and which might by the exercise of reasonable diligence be discovered, do not if false vitiate the contract. These are matters in regard to which neither is supposed to trust the other, but each is bound to exercise his own senses and judgment in arriving at their value and condition. (Chitty on contracts, 681, 682, and notes; *Sandford* v. *Handy*, 23 Wend. 260; *Starr* v. *Bennett*, 5 Hill, 303; *Haight* v. *Hayt*, 19 New York, 464.)

But if the person selling shall use any artifice to mislead the other and to prevent him from taking the necessary steps to inform himself, as to those matters in regard to which he is bound to exercise his own judgment, the con-tract will be held void, or a recovery had against him for the damages sustained by the person injured. (*Hill* v. *Gray*, 2 Eng. Com. Law Rep. 16; *Mathews* v. *Bliss*, 22 Pick. 48.)

Any representation that affects the price of an article in regard to which one party places confidence in the other, will if relied on, and is false, and the party trusting to the representation is injured, render the contract void. (*Bow-ring* v. *Stevens*, 12 Eng. C. L. 157; *Phillips* v. *Buck*, 1

Vern. 227; *Taylor* v. *Fleet*, 1 Barb. S. C. R. 477; 1 Hilliard on Vendors, 324, 325, 339, 340; *Bench* v. *Sheldon*, 14 Barb. 66; *Vernon* v. *Keyes*, 12 East, 632—Affirmed, 4 Taunt. 488.)

Applying these principles to the case before us, it will be found that the sale of the hops in question was fraudulent and void.

The verdict establishes, 1st. The making of the representation. 2d. Its falsity. 3d. That it was relied on by the defendant. The only other element to be established to render it fraudulent was its materiality.

As I have already remarked, whatever affects the price of the property that is the subject of the contract is material.

The defendant had raised hops for several years prior to the sale in question. He was unacquainted with the market price of them. It was, therefore, due to himself to inform himself of the state of the market before entering into a contract of sale. Had he inquired of the purchaser as to the market price, and been misled by him, I am not prepared to say that the contract would not have been thereby rendered fraudulent. The inquiry was not as to the market price, however, but as to the price the purchaser was paying. The answer is not claimed to have been untrue. The defendant then inquired whether Wood had bought Ellwood's, and he was told that, if it was true he had purchased Ellwood's at twelve and one-half cents per pound, he, the defendant, would sell his at that price. It appears that Ellwood had not raised hops until that year; hence his dealing in the article was not such as to make his opinion as to the price very important. But we all know that there are men in every community whose judgment as to the value of property, or whose intelligence and shrewdness in business, give great weight to their opinions in the estimation of their neighbors, and who, if they should sell all their property at a given price, would regulate the price for the same property throughout their neighborhood. Who that deals in stocks would not be governed, as to the

price he would pay for a particular stock, by the opinion of an intelligent broker; or, as to the value of land, by the opinion of an intelligent, careful business man, whose interest it was to inform himself as to its value?

In this case it was not Ellwood's opinion only that the defendant designed to rest upon, but upon the price actually received by him for similar property sold.

Had the defendant rested satisfied with merely inquiring whether Wood had purchased Ellwood's hops, Wood might say that he did not and could not know that the sale by E. would influence the judgment of the defendant, and that his answer, therefore, might be false, without having reason to suppose it was causing injury to the defendant. But when told by the defendant that he sold at twelve and one-half cents per pound because E. had sold at that price, he was informed that his statement was relied on, and being untrue, as he knew it was, he was cheating the defendant. A purchase thus procured ought not to stand. (*Fellows* v. *Gwyder*, 1 Simons, 63.)

It is said that the defendant ought not to have trusted to Wood's statement; that he had the opportunity to inquire and should have informed himself as well as to the market price as to whether E. had sold at twelve and one-half cents per pound.

The defendant, several times during the interview, proposed to Wood to wait until he could inform himself as to the price of hops. But Wood refused to wait—insisted on an immediate answer, and told the defendant that the price would probably fall as it had done some years before. The defendant was under no obligation to sell that day, but he was anxious to get the highest price for his property, and he took the only means he could, and make an immediate sale, to inform himself as to the market value of the property.

I do not doubt but that a vendor of property may put upon the purchaser the responsibility of informing him correctly as to the market value, or any other fact known

to him, affecting the market price of the property, and if the purchaser answers untruly, the purchase will be void by reason of the fraud. The purchaser is not bound to answer in such a case; but if he does he is bound to speak the truth.

It is said by the appellant's counsel, in his points, and by Justice POTTER, in his dissenting opinion in the case, that the defendant has not sustained any damage, because he was paid the market value of hops at the time the sale was made.

The evidence of the first witness was that the price of hops, about the date of the contract, at Fort Plain, the place of delivery, was twelve to twelve and one-half cents per pound. But, he adds, hops were sold, as he understood, at twenty-eight cents at Fort Plain. He had heard that some were purchased for twenty-eight cents, but did not know the quality. The evidence as to the price being twenty-eight cents was not competent, but it was not objected to, and the jury had the right to take it, and give it such weight as they deemed it entitled to.

If the jury were bound to act upon the legal evidence of value only, then it would follow that the defendant received for his hops the fair market price at the time of the sale, and he would have no right to complain. But the other evidence being in without objection, or any intimation to the jury that they might not act upon the hearsay of the witness as evidence of the market value, I think the jury had the right to find that the defendant was induced by the misrepresentation to sell for less than the market price.

In any view of the case I think the judgment was right and ought to be affirmed with costs.

HOGEBOOM, J. I assent, after some hesitation to the affirmance of the judgment in this case, but not without some misgivings as to the soundness of the legal propositions involved in such affirmance. As a general principle, the false affirmation which should be permitted to operate

as the foundation of a cause of action or of a defense, should relate to a fact, and not to a mere opinion; and to a fact directly bearing upon the subject matter of the contract, and not to one merely collateral and incidental thereto.　As applied to the present case, there was no false statement in regard to the existing value or market price of hops, or as to the price that the buyer or speculator was paying therefor; but there was a false statement—for so we must assume after a verdict of the jury in favor of the defendant—in regard to the fact that Wood had purchased the hops of Ellwood, a neighbor of the defendant. Ordinarily, such a fact could not be supposed likely to have any legal or perceptible bearing upon the negotiations of other parties; and yet, if we assume that Ellwood had experience in the cultivation of hops, and judgment and skill as to their probable rise or fall in market, and that the defendant had not; if we assume, further, that Countryman had confidence in the skill, judgment and experience of Ellwood, more than in his own, and would be likely to be governed by them in making a contract for himself; if we assume, further, that the article of hops was then as yet in a growing and immature state, and had not yet attained a fixed or determinate value in the market; and that its value, at the future period, when the hops would be ripe and cured and ready for delivery, would be subject to much fluctuation from ordinary circumstances, such as the influence of the weather upon the crops, the demand for the article, and the condition of the money market; if we assume, further, that the proposed buyer was aware of the reliance which the defendant placed upon the skill, judgment and experience of Ellwood, and of the influence they were likely to have upon the mind of the defendant in inducing a sale of his hops, or the contrary; and that Wood, with such knowledge, falsely and fraudulently represented that Ellwood had sold him his hops, with the view of entrapping the defendant into a sale of his crop— all of which assumptions, I think, we are warranted to

make from the verdict of the jury upon the facts of the case as presented in the testimony—I am inclined to think we are justified in concluding that, under the peculiar aspects of this case, the false representation of Wood was to a fact material to the contract, inasmuch as it had a vital bearing and influence upon the mind of the defendant in inducing him to enter into it. Considered in that light, I am on the whole inclined, though contrary to my first impressions, to regard the defense to the action as well founded in law and the judgment capable of being supported; but I do not wish to be regarded as extending the general principle beyond the just bearing of facts kindred to those which are presented in the present case.

With this explanation I assent to the *affirmance* of the judgment of the supreme court.

DENIO, Ch. J. and SELDEN, J., were also for affirmance; the latter on the ground stated by DAVIES, J., but expressing no opinion on the question of practice. WRIGHT, JOHNSON and INGRAHAM, JJ., were for reversal.

Judgment affirmed.