Carr v. Schermerhorn.

---

DAVID CARR, Respondent, *v.* JAMES A. SCHERMERHORN, impleaded, with JOHN S. BARBER, Appellants.

(GENERAL TERM, THIRD DEPARTMENT, SEPTEMBER, 1870.)

In an action to recover damages for false representations, fraudulently made by the defendants, that a certain stock company had obtained an interest in a valuable patent, which patent was in fact worthless, whereby the plaintiff had been induced to purchase a share of the stock of the company.—*Held,* on demurrer to the complaint, that allegations showing the actual value of the patent, the extent of the company's interest therein, and the number of shares of its stock, for the purpose of showing the actual value of the stock as compared with the value which the defend-

Carr *v.* Schermerhorn.

ants represented it to have were not essential; and that it was sufficient upon this point if the complaint averred that the stock was represented by the defendants to be valuable, and that it was in fact valueless.

And where it is averred in such an action that the defendants made representations to the plaintiff that individuals, of repute and pecuniary means had invested money in the purchase of rights in the patent, and given their notes in payment for the stock of the company, the averments are material without other averments, to the effect that such individuals had experience in similar dealings, that the plaintiff had confidence in their judgment, and that the defendants were aware of such confidence, and took advantage of such knowledge to entrap the plaintiff.

And if the complaint avers that the plaintiff, relying upon the representations made, and believing the same to be true, was induced to purchase, and did purchase, the stock, it is not necessary to allege that the plaintiff had no knowledge of the true value of the stock.

So, also, an allegation that the representations made by the defendant as to the value of the patent were false and untrue, was sufficient to show that they knew the stock to be worthless.

And where the allegation is, that the false and fraudulent representations which induced the plaintiff's purchase were made by the defendants jointly, they are both liable, notwithstanding it is averred that the payment or security was received directly, by only one of them.

APPEAL from order of Special Term overruling demurrer of defendant, Schermerhorn, to the plaintiff's complaint. Case was submitted on printed points.

*M. M. Waters,* for the appellant.

*George B. Jones,* for the respondent.

Present—MILLER, P. J., POTTER and PARKER, JJ.

By the Court—MILLER, P. J. This is a demurrer to the plaintiff's complaint. Several causes of demurrer are specifically assigned, but none of them are pressed upon the argument, except such grounds as may be supposed to arise under the general allegation that the complaint does not state facts sufficient to constitute a cause of action. The action is to recover damages for a fraud perpetrated by the defendants upon the plaintiff, and is apparently based upon the principle, that fraud accompanied with damages, is a good cause of

action. (2 Kent Com., 489; 2 East Reps., 108; 6 Bing., 396.) The complaint charges quite at length, that the defendants, conspiring to cheat and defraud the plaintiff, and other persons, procured certain citizens well known, and reputed to be men of influence and pecuniary responsibility, and of high business character, to take stock and to give their notes to the defendants and the officers of a company organized by them, to use and sell a patent right for an improved hay loader, and of which the defendant, Barber, was president, and the defendant, Schermerhorn, was treasurer, under an agreement that said notes were not to be regarded as valid obligations, but were procured simply to be used by exhibiting them to such persons as the defendants might thereafter solicit to purchase stock, and so as to influence such persons and give them confidence in said company; that to induce the plaintiff to purchase stock in said company, and to obtain from him money or his note therefor, the defendants so conspiring, made certain false representations, which are stated at length as to the value and useful character of the invention, and the useful purposes for which it could be employed; that the company had purchased an interest in said patent; that there was but little of the stock which had not been taken; that certain citizens who were therein before named, had invested large amounts in purchasing an interest in said patent, and had purchased a large amount of stock of said company, and had given notes which were exhibited to the plaintiff; that they had great confidence in the value of the stock, and were realizing large profits on the investments, etc.

It then proceeds to state, that the defendants requested the plaintiff to purchase one share of the stock, being $500, and give his note therefor to them, alleging that the profits from said stock would be more than sufficient to pay said note before it became due; that the plaintiff relying upon said representations, and believing the same to be true, did purchase of the defendants, or of the company, through the said defendants, one share of stock for $500, the par value, and gave his negotiable promissory note payable to said Barber in

one year after date, for the same; that the note was received by Barber, transferred to a *bona fide* holder before due, and the plaintiff sued and compelled to pay the same with interest and costs. It then alleges, that said representations were wholly false and untrue, and so known to be by the defendants, when they made the same, stating specifically wherein the hay-loader failed to answer the representations made; and avers that the citizens before named had not invested a large amount of money, etc., negativing the statement made in regard to them.

It also states, that the defendants, to deceive the plaintiff, fraudulently concealed the arrangement in regard to the notes; and said notes were surrendered up and canceled without anything being paid thereon; that the defendants procured divers persons to sign certificates that they had purchased an interest in the patent and had become members of this company, when in fact no purchase had been made, and they had not become members, and such certificates were shown to plaintiff as an inducement for him to invest and give his note.

It also sets forth that the defendants did procure divers persons to represent to the plaintiff that they had largely invested in said patent when they had not done so; that the plaintiff was led to believe by these fraudulent acts and representations, and did believe said representations last above mentioned to be true, etc.; that the stock was at the time, and has been ever since, utterly worthless, and has been returned to the defendants. The plaintiff claims to recover $1,000 damages.

Various objections are urged to the complaint in the points submitted by the defendants:

1st. It is insisted that there is no averment showing that the value of the stock was less than it would have been if as represented, or that one share of the stock would have been of any value if the representations made had been true. This point is based upon the idea that the interest which the company had acquired in the patent should have been stated, and should have been shown to have been sufficient to affect the

Carr v. Schermerhorn.

value of each share.   This would embrace the actual value
of the patent; the number of shares and other matters mate-
rial for the purpose of showing the amount and value of the
company's interest.   I think this was not necessary in the
complaint, and it was enough to aver, first, that it was repre-
sented to be valuable, and then that it was valueless.   This is
sufficiently stated in the pleading, which avers that it was
represented that the invention was a valuable and useful one;
that but little of the stock was left; that individuals of high
character had embarked in the enterprise; that the profits
from the stock would be more than sufficient to pay the note
before it became due, and that it was at the time, and since
then has been, utterly worthless.   These averments are suffi-
cient to show that the stock purchased would have been of
value if the representations made were true, and were quite
enough to show value.   If they were as stated, then clearly
the plaintiff could have sustained no loss.   He would have
realized the full amount before the note became due out of
the profits, whereas it turned out that the stock was worth-
less, and he lost all he had paid.

2d. It is said that there is no averment, showing the
materiality of the false representations, or either of them.
All representations made, upon which a party relied, and by
which he was induced to enter into a contract, are deemed
material.   And whether they are material or not, or induced
the party to make the contract as a general rule, is a question
for the jury.   It is easy to see that representations made,
that individuals of character and pecuniary means  had
invested money in the purchase of a patent, and executed
their obligations to pay for stock, might very well have
influenced others in embarking in the same business.   Such
operations depend for success mainly upon the confidence
which the public, or those seeking investments, may have in
the value of the stock, which is more or less affected by the
character of those who purchase or subscribe for it.   If men
of sagacity and shrewdness embark in such an undertaking,
it is rather strong evidence of their faith, and begets confi-

dence in others. Hence, it appears to me, it was unnecessary to aver, as claimed, that these men had experience in dealings of that kind; that plaintiff had confidence in their skill and experience, and that defendants knew of the confidence reposed by plaintiff in them, and with such knowledge, and with a view to entrap the plaintiff, made the representations. The fact itself, that they were owners of the stock, ordinarily would be likely to have a perceptible influence upon the minds of most parties in negotiating for the purchase of property of this character, and may very well have induced the purchase in the present case. False representations as to price paid for real estate, was held to be a good defence to a bond given for the purchase money. (*Van Epps* v. *Harrison,* 5 Hill, 63.) It was observed in this case, that the credulity of the defendant furnishes but a poor excuse for the falsehood and fraud of the plaintiff. In *Valton* v. *N. F. L. Ass. Co.* (20 N. Y., 32), it was decided that fraudulent representations, though not material to the risk, if material in the judgment of the insurer in issuing a policy, and induced the risk, would avoid the policy. A more liberal rule, it is true, is applicable in contracts of insurance, and it is not necessary to go to that extent in a case like the one at bar. It is enough, if it is manifest from the fact itself, that the party may have been deceived by relying upon the representations made. It is clearly apparent from the allegations in the complaint, that this may have been done, and thereby he may have been induced to make the purchase. Any representation which affects the price of property, in regard to which confidence is placed by one party in another, if relied upon, and is false, and the party trusting is injured thereby, entitles him to relief. (See *Smith* v. *Countryman,* 30 N. Y., 655.)

It is not claimed by the defendants, that the other false representations alleged were not material, and it is not necessary therefore, to discuss how far they sustain the plaintiff's cause of action.

3d. It is further urged, that the complaint contains no averment that the plaintiff was ignorant of the true value of one share of the stock purchased. The complaint avers, that the plaintiff, relying upon the representations made and believing the same to be true, was induced to purchase, and did purchase the stock. This is, I think, equivalent to an allegation, that he was ignorant, and had no knowledge of the true value of the stock. Even if he had knowledge otherwise, it is enough, I think, to sustain the allegation of fraudulent representations, to aver that the plaintiff relied on the representations made, and that these, independent of any other knowledge, or information, induced him to make the purchase.

4th. I think that no averment was necessary, that the defendants knew that the stock was not valuable. The allegation that the representations made as to its value were false and untrue, sufficiently states that they knew it was worthless. If they, knowingly, made false representations as to its being of value, it necessarily follows that they must have known it was not valuable.

5th. It is said that the complaint does not state any fact showing that the plaintiff necessarily sustained any damage, as a consequence of the defendant Schermerhorn's representation.

The representations made by both the defendants conspiring together was the inducement which caused the plaintiff to purchase the stock, and by reason of the joint conduct of the defendants acting together he was obliged to pay a sum of money for property which was worthless. It is difficult to see how Schermerhorn can be separated from the other defendant. Both of them aided in producing the injury and the damages which followed; and, I think, both are equally responsible for the consequences. Although Schermerhorn did not directly receive and dispose of the note, yet he acted in association with Barber in the fraudulent act which induced the plaintiff to pay a large sum of money, and there is no good reason why he should not be equally liable. The representa-

tions made by the defendants being false in fact, and so known to the defendants, and being made with an intent to deceive the plaintiff, and having produced that effect and caused the loss which followed, were sufficient to make out a case against both of them.

I find no objection to the complaint, and think that the order of the Special Term overruling the demurrer should be affirmed with costs.

Order affirmed.