## In re BERNSTEIN.

(District Court, S. D. New York. December 10, 1919.)

BANKRUPTCY ⊙⇒140(2)—RECLAMATION OF PROPERTY ACQUIRED BY FRAUD.

Where bankrupt owned a business carried on under a trade-name and managed by her husband, false statements by the husband to one from whom he bought goods that he was the owner and doing a big business *held* not binding on bankrupt, nor material, and not to entitle the seller to reclaim the goods.

In Bankruptcy. In the matter of Tillie Bernstein, doing business as the Rialto Tire Company, alleged bankrupt. On motion to confirm report of referee, as special master, directing delivery of property to a claimant. Reversed.

Frederic R. Lillie, of New York City, for claimant.
Max Sheinart, of New York City, for receiver.

MAYER, District Judge. This is a motion to confirm the report of the referee, as special master, directing the receiver to deliver certain goods to Economical Tire & Supply Company.

The facts, briefly stated, are that Tillie Bernstein, the alleged bankrupt, did business under the name of Rialto Tire Company. The special master has reported:

"The evidence shows that Jack Bernstein, with the knowledge and consent of Tillie Bernstein, carried on the business of the Rialto Tire Company; that Jack Bernstein transacted most of the business, bought all the merchandise, and drew all the checks in the name of the business, by virtue of a power of attorney given him by his wife."

The special master also held that Jack Bernstein made certain statements, upon which Rauchfuss, the president of the reclaiming creditor, relied, and that these statements were both false and material. An examination of the record fails to disclose any statement as to the actual financial condition of Tillie Bernstein. The testimony shows some general statements to the effect that Jack Bernstein said he was doing a big tire business, but there is nothing in the testimony showing that Jack Bernstein had made any representation as to the actual financial condition of the business which Tillie Bernstein was doing under the name of the Rialto Company. The sole representation upon which the reclaiming creditor relies is found in the following extract from the testimony of Rauchfuss, as to what Jack Bernstein said to him. Rauchfuss testified that Bernstein said:

"I am the owner of the Rialto Tire & Supply Company, both president and treasurer, and I can just as well give you the business as anybody else."

There is in the record some testimony corroborative of that given by Rauchfuss in this particular. Jack Bernstein, in substance and effect, denied that he made such a statement; but I shall assume, for the purpose of this decision, that the statement was made by Jack Bernstein.

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

There is no testimony whatever that the statement thus made by Jack Bernstein was either authorized by or known to Tillie Bernstein. Assuming, for the purpose of the argument, that the agency as between Tillie Bernstein and Jack Bernstein existed in the manner and to the extent above quoted, there is nothing in such an agency which can be construed as an authorization by Tillie Bernstein to Jack Bernstein to make a statement of this kind.

It must be concluded in the first place, that the statement of Jack Bernstein was not in any manner binding upon Tillie Bernstein. In the second place, a reading of the record discloses that the statement was in no sense a material statement. There is nothing to show what, if any, Jack Bernstein's own resources were. All that the statement would amount to would be an assurance to Rauchfuss that Bernstein's business ability could be relied upon. There was nothing material in such a statement, because Bernstein, according to the special master, transacted most of the business and bought all the merchandise. The following extract from the testimony of Rauchfuss demonstrates how inconsequential the statement was:

"He said: 'I am doing a big tire business. I buy about two to three thousand dollars worth of Pennsylvania tires a month.' And he pulled out his bank book and showed it. I didn't notice it very closely, but I noticed a deposit of around $700, the last item in it, and I had known the man for a long time, and I didn't doubt any of his ability, or * * * anything strange in the case, and I gave him anything he asked for."

Finally, it is very doubtful whether, in a business sense, Rauchfuss can be said to have relied upon the statement that Jack Bernstein was the owner, in order to extend the credit; but, assuming that he did, I am of opinion that the statement was not material, and, even if material, was made under circumstances for which in no manner Tillie Bernstein can be held responsible.

The cases of Smith v. Countryman, 30 N. Y. 655, and Fairchild v. McMahon, 139 N. Y. 290, 34 N. E. 779, 36 Am. St. Rep. 701, to which the special master and counsel for the claimant refer, are not in point. The principles laid down in those cases are now regarded as simple and well settled. In Smith v. Countryman, supra, the representations were made by the person sought to be held responsible therefor. In Fairchild v. McMahon, supra, the misrepresentation as to the cost of the property involved was made by a broker with the consent of his principal, and, in any event, was strictly relevant to the transaction. In the case at bar, if Tillie Bernstein authorized her husband to buy merchandise, and the husband had made false representations as to her financial condition, a different question might arise; but, in my opinion, it is a far stretch to hold that if, without any evidence of knowledge or authority, an agent represents himself as the owner of the business, then his principal can be held for such a representation.

The conclusion of the referee must be reversed, and an order in accordance herewith may be submitted on one day's notice.