### BENCH *vs.* ISAAC SHELDON and HIRAM SHELDON.

The rule in regard to the duty of disclosure on the part of persons dealing with each other, is substantially the same both in law and equity. It confines the obligation to disclose material facts, to a party who is under some special obligation, by confidence reposed, or otherwise, to communicate them truly and fairly.

In the case of the sale of property, the law presumes that the purchaser reposes confidence in the vendor, as to all such defects as are not within the reach of ordinary observation; and therefore it imposes the duty upon the vendor to disclose fully and fairly his knowledge of all such defects. But in ordinary cases the vendor reposes no such confidence in the purchaser. Hence it has been held that a purchaser may use any information he may have, in regard to property, for his own advantage, without disclosing it; provided he does nothing to mislead or deceive. *Per* JOHNSON, J.

While a party in whom no trust or confidence is reposed, and between whom and the other party no legal relation in regard to the subject of the purchase exists, need not disclose material facts within his knowledge, which he knows such other party to be ignorant of, he must do nothing whatever to deceive or mislead; or he will not be protected.

The plaintiff having lost a flock of sheep, made search and inquiry for them, without effect. Subsequently the sheep were taken up in the highway by one D., who informed one of the defendants thereof. The other defendant then went to the plaintiff, and concealing from him his knowledge of the sheep having been found, inquired whether he had found them. Being in-

Bench *v.* Sheldon.

formed that he had not, the defendant said " *he supposed he never would find them,*" and offered the plaintiff $10 for the sheep, which the plaintiff accepted, and gave him a bill of sale thereof. The defendants then went to D. and claimed the sheep and their fleeces, and the same were delivered to them. In an action by the plaintiff to recover the value of the sheep and wool, on the ground that the sale had been procured by fraud; *Held,* that the action could not be maintained on the ground of the defendants' neglect to disclose the facts within their knowledge; but that the defendants were made liable by the expression of a belief that the plaintiff would never find his sheep, by means of which he was deceived and misled.

This action was commenced in a justice's court. The plaintiff in his complaint alledged that he had lost a flock of sheep and lambs, and that the defendants, having found where said sheep were, went to the plaintiff pretending not to know where they were, and that it was a matter of risk altogether on their part, and by such false pretenses induced the plaintiff to sell the sheep for $10, when they were in fact worth a much larger sum. The defendants denied the allegation of fraud, and that they knew where the sheep were, before they purchased. It appeared from the evidence that the plaintiff lived in the town of Sennett, in the county of Cayuga, and that some time in June, 1851, before shearing, he lost a flock of sheep, 21 in all, of which 12 were old sheep and the residue lambs. The plaintiff made a good deal of search and inquiry for his sheep, without effect. On the 12th of July the sheep were taken up in the highway in the town of Mentz, by Mr. Dixon, who caused them to be sheared, and a description put upon the town records of Mentz. On the same day Dixon saw the defendant Hiram Sheldon, and informed him of his having taken up the sheep, and gave him a description of them, and inquired if he knew who had lost any sheep; to which Sheldon replied that a man in Sennett, south of him, had lost some. On the 23d of August, 1851, the other defendant, Isaac Sheldon, went to the plaintiff and talked about his sheep and inquired whether he had found them. The plaintiff said he had not. Isaac then said " he supposed he never would find them." He then offered the plaintiff $5 for them. The plaintiff said he had been offered $15, and would give any one $10 who would bring them to him. Isaac finally offered $10, which

the plaintiff agreed to take, and gave him a writing, as follows :
" Know ye, August 23d, 1851, that I have lost twelve sheep and
nine lambs, the sheep middling fine wool, one smut-nosed south
down buck, without horns ; and this is to certify that I have
sold them to Isaac Sheldon, wherever he can find them, and
whoever has them. Please deliver them to said Sheldon. The
sheep were marked with one ear cut off, and the other ear
with a round hole in it. The sheep were not sheared when I
lost them. John Bench." Soon after both defendants went to
Dixon's and claimed the sheep. Isaac Sheldon said he owned
the sheep, and Hiram Sheldon claimed the wool. They were
taken away by Hiram and another person. The fleeces averaged
from four to five pounds each, and were worth two and sixpence
per pound. It was proved that the defendants were offered $2
for one of the lambs, which was refused. The cause was tried
by jury, who rendered a verdict against the defendants for $80.
The defendants appealed to the county court, where the judg-
ment of the justice was reversed. And from the latter judg-
ment the plaintiff appealed to this court

*George Rathbun,* for the appellant. I. The evidence shows
that the defendants were guilty of fraud in the purchase of the
plaintiff's sheep. The verdict of the jury was correct, and the
judgment of the county court is erroneous, and ought to be re-
versed. The defendants are both shown to have been engaged
in the fraud. Hiram Sheldon first found them ; Isaac Sheldon
bought them ; both defendants went after them, and both claim-
ed them. II. The justice rightly refused to nonsuit the plain-
tiff, and also to discharge Hiram Sheldon. (*Kelley* v. *Kelley,* 3
*Barb.* 419. 6 *Cowen,* 435.) III. The defendants knew the
plaintiff supposed his sheep were lost past recovery. They
knew where they were. Their language and conduct was cal-
culated and intended to strengthen his error, and to take advan-
tage of it, to his injury. They succeeded. This is fraud, which
renders them liable to the plaintiff for damages. (1 *Bouv. Inst.*
227, § 585 ; *also p.* 301 *to* 303. 8 *U. S. Dig.* 91, § 4.) False
representations of vendee, &c. (*Ash* v. *Putnam,* 1 *Hill,* 302.

Bench *v.* Sheldon.

*Willson* v. *Force,* 6 *John.* 110. *Cary* v. *Hotailing,* 1 *Hill,* 311. *Otis* v. *Sill,* 8 *Barb.* 102. *Camp* v. *Pulver,* 5 *Id.* 91.) Fraud or deceit, accompanied with damage, is a good cause of action. (*Upton* v. *Vail,* 6 *John.* 181.) This is a principle of natural justice, long recognized in law. (*Story on Sales,* §§ 165, 174, 175, 176, 177.) The party must speak at the time, or remain for ever silent. Whether there is fraud or not, is a question of fact for the jury. (*Ward* v. *Center,* 3 *John.* 271.) The jury is not confined to the value of the property; they may give vindictive damages. (*Allen* v. *Addington,* 7 *Wend.* 9; *S. C.,* 11 *Id.* 374.) IV. The county court took into consideration the question whether the plaintiff could retain the $10—the purchase price—and still recover the damages. This is a point not raised on the trial, and could not be raised in the appellate court. The plaintiff might have met this point by proof that he had refunded the money before suit brought. (*Waters* v. *Travis,* 8 *John.* 566. *Palmer* v. *Lorillard,* 16 *Id.* 348. *Campbell* v. *Stakes,* 2 *Wend.* 137. *Laugdon* v. *Fire Depart. N. York,* 17 *Id.* 234. 1 *Barb. Ch. Pr.* 396.)

*J. R. Cox,* for the respondents. There is no authority or elementary principle of law which can sustain this action, even if the proof supports the complaint—because, I. The purchaser is not bound to disclose information which he has received, to the seller, although it might materially affect the price which the seller would put upon the property. (*Story's Eq.* § 197 *to* 207. *Story's Cont.* §§ 181, 545. *Chit. on Cont.* 416. *Blydenburgh* v. *Welsh,* 1 *Bald.* 331. *Kintzing* v. *McElrath,* 5 *Barr.* 467.) "The disclosure of any superior knowledge which one party may have over the other, as to these facts and circumstances, is not requisite to the validity of a contract, &c. The common law affords to every one reasonable protection against fraud in dealing; but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly," &c. (2 *Kent's Com.* 484.) "However correct Cicero's views may be of the duty of every man, in point of morals, to disclose all facts to another with whom he is dealing, which are material to his

interest; yet it is by no means true that courts of justice under-take the exercise of such a wide and difficult jurisdiction." (1 *Story's Eq.* § 205.) Citing the instance of the *valuable mine*, decided by Lord Thurlow, reported in *Fox* v. *Mackreth*, (2 *Bro. Ch. Rep.* 420, " I am not aware of any case, or recognized principle of law, upon which such a duty can be considered as incumbent upon a party bargaining for a purchase." (*Per Ellen-borough, in Vernon* v. *Keys*, 12 *East*, 637, 638; *affirmed on error, 3 Taunt.* 488. *Sugd. on Vend.* 6, 7*th ed.*) " The question in this case is, whether the intelligence of extrinsic circumstances, which might influence the price of the commodity, and which was exclusively within the knowledge of the vendee, ought to have been communicated by him to the vendor. The court is of opinion that he was not bound to communicate it." (*Marshall, Ch. J. in Laidlaw* v. *Organ*, 2 *Wheat.* 195.) The case of *Livingston* v. *The Peru Iron Co.*, (2 *Paige*, 390,) concedes the principle for which we contend, i. e. that disclosure is unnecessary. It is one thing to relieve a party in equity from a contract obtained by actual falsehood; and another thing to let him keep the whole consideration, and give him an action for damages besides, against the vendee, for his *silence*, at law. The attempt to define and circumscribe the contrary doctrine, would be as ridiculous as impossible. If the principle of *equality* is contended for, A. could never buy a floc of sheep of B. without communicating and *effectually causing* B. *to understand fully* the following: 1st. All A.'s informa about these sheep. 2d. A.'s views of the sheep market in ral. 3d. A.'s views, information, guesses, hopes and fears respect to all other property, which might directly or indi y, probably or possi-bly, singly or collectively, presently entually, actually or apparently, influence the value or price eep. 4th. A. would also be bound thoroughly to educate an in the mind of B. up to a standard fully equal to his own, s to make him fully equal to judge, &c. After all was done would not sell the sheep, and A. would have his labor for hi ins. By prosecut-ing this action, the plaintiff attacks and e cts to break down the mainspring of all commercial enterpris iz. the expectation

Bench *v.* Sheldon.

of gain. The policy of law is to teach by example, to reward enterprise and punish indolence and folly. "*Vigilantibus, non dormientibus,*" &c. That these sheep were supposed by the seller to be lost, when the buyer knew that they were found, does not affect the principle. Any fact is within the principle, which is material to the price, and is concealed by the purchaser. The cases, of a man buying a diamond, of which the seller does not know the value ; of a man buying a lot of tobacco, which is worth much more than the seller supposes ; of a man buying a lot on which is a valuable mine, unknown to the seller ; of a man buying sheep, which the seller does not know are found ; are precisely analogous and equally within the principle, which is the suppression of a material fact likely to augment the price, which fact is known to the buyer, unknown to the seller. But if it be charged that "Sheldon said he supposed he never would find the sheep," which might have influenced the mind of Bench, we answer : II. Even as against vendors, the fraudulent representation must be of *some material fact existing ;* a declaration of intention, or rehearsal of probabilities, is not enough to sustain the action. (*Gallager* v. *Brunel,* 6 *Cowen,* 346, *and cases. Story's Cont.* §§ 172, 175, 176.) Again ; the question here is not whether by disaffirming the contract of sale, and tendering the consideration money, the party might not maintain trover for the sheep, after demand. But without such tender and without such demand, he asks more than the value of his sheep ; in short, he asks to profit doubly, by his own negligence. There is no analogy between contracts of insurance and contracts of sale. The underwriter, like the vendee, is regarded as rightfully relying upon the information of the risk given him by the other party. It is a relation of confidence and trust. (3 *Kent's Com.* 282 *to* 286.) No such trust was asked or reposed here. Courts can never encourage the folly and improvidence which accepts the price a stranger offers, asking no questions, and then allow him to bring an action for fraud, and recover twice the value of the property sold, without demand, or returning the consideration. But independent of the main objections to this recovery, there are other errors for which the justice's judgment was properly

reversed. 1st. Hiram Sheldon had nothing to do with the purchase; yet the judgment is against him. 2d. There is no proof that either of the Sheldons knew where the sheep were, or that they were living, when Isaac bought them. These essentials were guessed by the jury. 3d. Can Bench retain the price with one hand and bring a suit for fraud with the other? (*Vernon* v. *Keys*, 12 *East*, 632.) 4th. There is in this case no evidence that any other person, with full knowledge of all the facts claimed to be suppressed, would have given more than $10 for the sheep. This is essential. (*Id.*) There is therefore in this case no evidence which can sustain the verdict; and the judgment upon it was properly reversed. (2 *Hill*, 125.) The judgment of the county court should therefore be affirmed.

*By the Court,* JOHNSON, J.    Was the defendant, Isaac Sheldon, when he went to the plaintiff to purchase the sheep in question, guilty of a fraud which the law notices, and gives a right of action to redress, in withholding the fact within his knowledge, that the sheep had been found? That he was under a strong moral obligation to make the disclosure, none will deny, but the legal duty is not so clear. It was a gross moral wrong and fraud in him to withhold the information, and take advantage of the plaintiff's ignorance.

The rule in regard to the duty of disclosure, on the part of persons dealing with each other, seems to be substantially the same both in law and equity. The rule originally laid down by Chancellor Kent, (2 *Kent's Com.* 482,) was, that "each party is bound to communicate to the other his knowledge of material facts, provided he knows the other to be ignorant of them, and they be not open and naked, or equally within the reach of his observation." The learned commentator, in a note to the text, subsequently qualified the rule, so as to confine the obligation to disclose material facts, to a party "under some special obligation, by confidence reposed, or otherwise to communicate them truly and fairly." The rule as thus qualified is, I apprehend, the true rule, and extends the obligation as far as it can be safely or conveniently enforced, in the ordinary dealings between

men. (*Story's Eq.* §§ 147, 148, 207. *Laidlaw* v. *Organ,* 2 *Wheat.* 178. *Fox* v. *Mackreth,* 2 *Bro. Ch. Rep.* 420.)

In the case of the sale of property, the law presumes that the purchaser reposes confidence in the vendor, as to all such defects as are not within the reach of ordinary observation, and therefore it imposes the duty upon the vendor to disclose fully and fairly his knowledge of all such defects.

But in ordinary cases, the vendor reposes no such confidence in the purchaser. The former does not look to the latter for information in regard to the qualities or condition of the thing sold, and is not deceived or misled by any information the latter may have in regard to it. And hence it has been held, that a purchaser may use any information he may have in regard to property, for his own advantage, without disclosing it, providing he does nothing to mislead or deceive.

It is obvious, in the present case, that the defendant, Isaac Sheldon, was under no special obligation to the plaintiff. The plaintiff reposed no confidence in him by reason of any legal relation existing between them. Had the plaintiff employed the defendant to find his sheep, then the law would have imposed the duty of disclosing the fact of their having been found. So, had the defendant taken up the sheep himself, he would have been agent or bailee of the plaintiff, and therefore under special obligation to communicate this material fact. But the defendant was a mere stranger, who had obtained the information casually, from a source equally open to the plaintiff, and was therefore under none other than a strong moral and christian obligation to disclose. I am unable to distinguish this case in principle, so far as the duty of disclosure is involved, from the purchase of the farm with the mine upon it; the existence of the mine being known to the vendee but not to the vendor, as put in the case of *Fox* v. *Mackreth,* or the case of *Laidlaw* v. *Organ,* before cited.

I have considered the case thus far upon the question of the duty of the purchaser to disclose, merely; and am clearly of opinion that upon that ground the defendants are not liable. But there is another feature in the case which, in my judgment,

---

---

stamps the character of fraud in a legal sense upon the transaction on the part of the purchaser, in characters too plain to be mistaken or evaded. While a party in whom no trust or confidence is reposed, and between whom and the other party no legal relation in regard to the subject of the purchase exists, need not disclose material facts within his knowledge, which he knows such other party to be ignorant of, he must do nothing whatever to deceive or mislead; or he will not be protected.

In *Turner* v. *Harvey*, (*Jacob's Rep.* 178,) Lord Eldon said, " As in the case that has been mentioned, if an estate is offered for sale, and I treat for it, knowing that there is a mine under it, and the other party makes no inquiry, I am not bound to give him any information of it. He acts for himself and exercises his own sense and knowledge. But a very little is sufficient to affect the application of the principle. If a single word is dropped which tends to mislead the vendor, the principle will not be allowed to operate."

In *Laidlaw* v. *Organ*, Chief Justice Marshall said, " Each party must take care not to say or do any thing tending to impose upon the other." In the latter case, although the court held that the purchaser was not bound to disclose the intelligence he was in possession of, they yet granted a new trial, because the judge refused to submit the question to the jury to find whether any imposition was practiced by the vendee upon the vendor. Here the defendant, who negotiated the purchase, after ascertaining that the plaintiff had not been able to find his sheep, told him that he did not believe he ever would find them. The object of this was clearly to discourage the plaintiff from making further search or inquiry for his property; to induce him to sell it, as property which might never be discovered, for a mere nominal price, and to create the impression in the plaintiff's mind that he, the purchaser, did not know where the sheep were, or that any one had taken them up. It was equivalent to saying, I have not found them, and do not know of any one who has, and am of opinion that you will not be able to find them.

The fact of their having been found, was a material circum-

Bench *v.* Sheldon.

stance affecting the price; and the attempt to mislead and create a false impression in regard to the situation of the property, was a fraud of which the law justly takes cognizance. The evidence was sufficient to authorize the jury to find that something was said or done by the vendee to mislead and create a false impression in the mind of the vendor. The jury doubtless found also that the defendants were acting in concert, throughout, in the matter, as they well might, from the evidence before them. One reason assigned by the county judge for reversing the judgment of the justice was, that the verdict was for too much. The value of the wool was clearly proved, and the only evidence in regard to the value of the sheep was that one of the defendants had been offered $2 for one of the lambs, and refused to sell it at that price. There were twelve old sheep and nine lambs. Waiving the question as to the right of the jury to give exemplary damages in such a case, it was the duty of the jury to determine the value, from all the evidence before them. And I see nothing in the evidence to warrant the county judge in deciding, as he does, that the sheep were not worth half the sum found by the jury, or that the value placed upon them was too high. Whether the jury or the judge understood the value better, this court cannot determine. It is enough that there is nothing in the evidence to show that it was too high. It was the province of the jury to determine how much the sheep were worth, and the county court had no right to assume a fact not proved, to overturn the verdict. And besides, if the jury, in any case, may give exemplary damages to punish a party for bad faith and unneighborly conduct in his dealings, such corrective would not be misapplied in a case like this. But I do not intend to place the decision on this ground, or to discuss the question of the right to give exemplary damages in a case like this.

The judgment of the county court must therefore be reversed, and that of the justice affirmed.

[MONROE GENERAL TERM, September 6, 1852. *Selden, T. R. Strong* and *Johnson,* Justices.]