## CHRISTIAN F. A. DAMBMANN, Respondent, *v.* HERMAN SCHULTING, Appellant.

A party can only commit a legal fraud in a business transaction with another by fraudulent misrepresentations of fact, or by such conduct or artifice for a fraudulent purpose as will mislead the other party or throw him off his guard and cause him to omit inquiry or examination which he would otherwise make.

Where there is no such relation of trust or confidence between the parties as imposes upon one an obligation to give full information to the other, the latter cannot proceed blindly omitting all inquiry and examination, and then complain that the other did not volunteer to give the information he had.

Ignorance of a fact, extrinsic and not essential to a contract, but which, if known, might have influenced the action of a party to the contract, is not such a mistake as will authorize equitable relief; as to such facts the party must rely upon his own vigilance, and if not imposed upon or defrauded will be held to his contract.

Defendant, having become embarrassed in business, made an arrangement with certain of his creditors, among them the firm of which plaintiff was a member and to whose rights he succeeded, by which they agreed to and did loan to him $100,000 to meet his obligations, which he was to repay when he became able, of this sum plaintiff's firm loaned $10,000. After this and in March, 1867, defendant paid in full all of the debts he owed when the money was loaned, and then, at his request, the creditors who made the loan executed and delivered to him an unsealed instrument by which, for the expressed consideration of one dollar, they agreed to discharge defendant ' from the legal payment of the money loaned" he "giving his moral obligations to refund the said money, in whole or in part, as his means will allow in future." *Held,* that the liability resting upon defendant to pay when he was able was not discharged by this instrument as it was not based upon any consideration, and was not in the nature of a composition between a debtor and his creditors.

Defendant continued in business until August, 1868, when he sold out his stock for $225,000, the purchasers also agreeing to pay him one-third of what the goods sold for over $275,000 ; the value of the goods was then unknown to the defendant. Soon after plaintiff was informed by defendant of the sale and its terms ; defendant stated that the one-third was not worth much and that he had offered to sell it for $18,000 or $20,000. He had made this offer to several parties, and had made an arrangement to sell for $20,000, this he repudiated a few days after the conversation, but the party negotiating claimed it to be a valid sale    In October, thereafter, when defendant knew that goods, to the amount of $400,000 had been sold, and that more remained to be sold, he called upon plaintiff and after stating that the instrument so signed was

not a legal release, asked plaintiff if he would sign a legal release upon payment of $5,000 ; this plaintiff without making any inquiries agreed to and did do. In an action brought to set aside this release and to recover the balance, *held*, that the facts did not establish fraud or mistake authorizing the interference of the court; and that the action was not maintainable. ·
*Dambmann* v. *Schulting* (12 Hun, 1), reversed.

(Argued June 18, 1878 ; decided November 12, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term. (Reported below, 12 Hun, 1.)

This action was brought to set aside a release under seal, and to recover a balance alleged to be due plaintiff for money loaned defendant by the firm of C. F. Dambmann & Co., of which firm plaintiff was a partner, and to whose rights he succeeded.

The facts are set forth sufficiently in the opinion.

*C. Bainbridge Smith*, for appellant. The agreement executed by plaintiff's firm and defendant's other creditors in March, 1867, operated as a legal discharge of defendant's indebtedness for the money loaned him, and no action could be maintained upon his moral obligation to pay it. (*Stafford* v. *Bacon*, 1 Hill, 353–539; *Goulding* v. *Davison*, 26 N. Y., 608; *Depuy* v. *Swart*, 3 Wend., 134; *Ex parte Hall*, 1 Deac., 171; S. C., 36 E. C. L. R., 426; *Dambmann* v. *Schulting*, 12 Hun, 12.) The general release executed by plaintiff's firm and defendant's other creditors could only be declared invalid on the ground of fraud in fact. (*Penn. Railroad* v. *Shay*, 82 Penn., 195; *Wilson* v. *Wilson*, 2 Dev. Ch., 181; *Bench* v. *Sheldon*, 14 Barb., 66; *Attwood* v. *Small*, 6 Cl. & Fin., 232; 1 Story Eq. Jur., § 207; Story on Cont., § 519.) The allegations of the complaint, that plaintiff executed the release under a mistake of material facts caused by the misrepresentations of defendant and plaintiff's ignorance, and that defendant concealed certain facts, did not

constitute a cause of action. (*Dudey* v. *Scranton*, 57 N. Y., 428; *Young* v. *Burunpass*, 1 Freem. Ch., 241; Kerr on Fraud, 47–95; *Nichols* v. *Pinner*, 18 N. Y., 303; *Butler* v. *Viele*, 44 Barb., 166; *Wilson* v. *Wilson*, 2 Dev. C. R., 181; *Lefler* v. *Field*, 52 N. Y., 62; *Ellis* v. *Andrews*, 56 id., 83; *Bright* v. *Eynon*, 1 Burr., 395; *Sturtevant* v. *Ballard*, 9 J. R., 337, 342; Bigelow on Fraud, 469.) Where a judge or referee finds a fact wholly unsupported by evidence, or refuses to find a fact which the uncontradicted evidence establishes, it raises a simple question of law. (*Patten* v. *Carpenter*, MS.; *Fellows* v. *Northrop*, 39 N. Y., 117; *Mason* v. *Lord*, 40 id., 477; *Putnam* v. *Hubbell*, 42 id., 112; *Meyer* v. *Anderson*, 45 id., 169; *Peck* v. *Sheldon*, 48 id., 65; *Meacham* v. *Burke*, 54 id., 217; *Lamb* v. *Kelsey*, id., 645; *Smith* v. *Glens Ins. Co.*, 62 id., 85–87; Code Civ. Pro., § 994–1023.)

*William Watson*, for respondent. An act done or contract made under a mistake, or in ignorance of material facts, is voidable and relievable in equity. (1 Story Eq., §§ 140–193.) This rule applies to many cases of innocent ignorance on both sides. (*Curtis* v. *Leavitt*, 15 N. Y., 193; 9 Pick., 130; 8 Barb., 233; *Hammond* v. *Pennock*, 61 N. Y., 145; *Park* v. *Gurney*, L. R., 13 Eq., 79–113; *Smith* v. *Run. R. Co.*, L. R., 2 id., 264; *Michigan* v. *Phœnix Bk.*, 33 N. Y., 24; *New York Exch. Co.* v. *DeWolf*, 31 id., 273; *Carter* v. *Boehm*, 3 Burr., 1910; *Van Cortland* v. *Underhill*, 17 John., 405; *Dobson* v. *Pierce*, 2 Kern., 164.) The agreement first set up in the answer to discharge defendant without payment was without consideration and is void. (1 Smith's Leading Cases, 350; *Fitch* v. *Sutton*, 5 East, 250; 2 B. & Ad., 313; *Graves* v. *Key*, 2 T. & R., 366; *Stratton* v. *Rastall*, 2 id., 366.) If the terms of a composition agreement are not exactly followed by the debtor, the creditor is remitted to his original rights ; the onus is with the debtor. (*Fellows* v. *Stevens*, 24 Wend., 302; *Dalsen* v. *Arnold*, 10 How., 530; *Oughton* v. *Trotter*, 2 Nev. & M., 71; *Cranby*

v. *Hilay*, 2 M. & S., 120; *Rosling* v. *Maggendye*, 16 M. & W., 181; *Evans* v. *Purvis*, 1 Exch., 601.)   The agreements were in no sense composition deeds.   (McCall's Clerk Assistant [2d ed.], p. 188; *Gerard* v. *Woolner*, 8 Bing. Park. J.; *Baeshly* v. *Snowden*, Lord ELLINBOROUGH; *Wenhem* v. *Fowle*, 3 Dowling ; *Fellows* v. *Stevens*, 24 Wend., 302.)

EARL, J.   Prior to 1866, the defendant had for many years been a merchant extensively engaged in business in the city of New York.   In February of that year, he had become financially embarrassed, and contemplated an assignment for the benefit of his creditors.   He was finally dissuaded from making an assignment by the promise of his creditors to loan him the sum of $100,000 to aid him in meeting his obligations.   There was evidence tending to show that the sums thus to be loaned were to be repaid when he became able ; but he testified that it was to be optional for him to repay them, in case he paid the debts, which he then owed, in full.   The court at Special Term found that the arrangement was that he was to repay these sums when he became able.   In pursuance of this arrange ment, the firm to which plaintiff belonged, and to whose rights he had succeeded, loaned defendant $10,000.   On the seventh day of March, 1867, defendant had paid in full all the debts he owed when the money was loaned to him, and then, at his request, all the creditors who made the loans executed and delivered to him an instrument, of which the following is a copy, to wit : " We the undersigned agree, in consideration of one dollar paid to us, to discharge H. Schulting from the legal payment of the money loaned to him February first, 1866, said Schulting giving his moral obligations to refund the said money, in part or whole, as his means will allow in future."   This was not a sealed instrument, and was executed upon the request of the defendant, upon the claim by him that he had done as he had agreed when the money was advanced to him.   It was the clear intention of the parties, by this instrument, to discharge the defendant

from all legal obligation to pay the money advanced, leaving an obligation simply binding upon his conscience, but not enforceable at law, to pay when he became able, in whole or in part. If this instrument had been under seal or based upon a sufficient consideration, no proceedings in law or equity could have been thereafter taken to enforce payment against the defendant.

But according to the finding of the Special Term, before the execution of this instrument, the defendant was legally liable to pay when he became able, and this liability was not discharged by this instrument, for the simple reason that it was not based upon any consideration. It was not in the nature of a composition of a debtor with his creditors, and cannot be sustained upon the principles applicable to composition agreements. It does not even appear that each creditor signed it upon the consideration that other creditors would also sign it. It was a mere agreement to discharge debts without payment, and such an agreement cannot be upheld.

Down to this period of time there is no claim that there was any fraud or mistake which influenced the conduct of the plaintiff and the other creditors, and the position of the plaintiff and the defendant was as follows : While the plaintiff could legally enforce the payment of the $10,000 (the defendant being able to pay), he was under a moral obligation not to do so ; and the defendant, intending not to be legally bound to pay, was yet under both a legal and moral obligation to pay.

The defendant continued in business until August, 1868, when, on account of failing health and despondency, he sold out his whole stock of goods to the firm of H. & A. Strousburgh & Co. for the sum of $225,000, they agreeing to pay the most of that sum upon certain of his debts, and also to pay him one-third of what the goods should sell for above the sum of $275,000. The value of the goods was not known to the defendant or his vendees, and there is no claim that this sale was not made in good faith. Soon after this

sale, the plaintiff, having heard thereof, called upon the defendant, and was duly informed of the sale and the terms thereof, and of the amount of his property at that time aside from his interest in the one-third of the surplus. As to that one-third, the defendant informed him that that was not worth much, and that he had offered to sell it for $18,000 or $20,000. There is no evidence or claim that in this conversation the defendant made any intentional misstatement. He had offered to several parties to sell his one-third interest for the sum named, and there is no evidence that he then believed it to be worth more. He actually made an arrangement to sell it for $20,000 to one Von Keller. A few days after, however, he repudiated this arrangement, but Von Keller claimed it was valid.

Defendant's vendees went on and sold the goods, and they brought $576,981; and his one-third interest amounted to about $100,000. The defendant knew as early as the eighth day of October, 1868, that goods to the amount of $400,000 had been sold, and that some yet remained to be sold. On the last-named day he went to the plaintiff and said to him that he understood that the previous paper signed by him — the discharge above set out — was not a legal release, because he had not paid anything on account of the $10,000, and he wanted to know if the plaintiff would sign a legal release, upon payment of $5,000. The plaintiff said he would. Nothing more was said, and defendant paid him $5,000; and then the plaintiff executed to him, under seal, a full and absolute discharge from all liability. This action was brought to set aside this release and to recover the balance of the $10,000.

The plaintiff seeks to impeach this release on account of fraud, and the court at Special Term decided in plaintiff's favor, that the release was inoperative, as obtained by misrepresentation and concealment of material facts. The court did not find that there was any fraudulent misrepresentation, and there was none in fact. So far as I can discover, there was no misrepresentation of any kind. Neither did the

court find that there was any fraudulent concealment of any facts ; and there was no evidence to justify such a finding. The plaintiff had executed a discharge of his claim, which was illegal, and the defendant went to him and informed him of this fact, and stated that he wanted a legal release, and that he would pay him $5,000 if he would give it ; and he gave it. He stated to the plaintiff that he was not discharged, that he wanted to be, and the plaintiff discharged him. He made no statement and used no artifice to throw him off from his guard or to entrap or mislead him. There was no reluctance on the part of the plaintiff, and the defendant had no reason to suppose there would be, as the plaintiff had already agreed in writing to discharge him. The prior instrument shows that it was the understanding of the parties that the defendant should, so far as concerned any legal liability, have just such a discharge.

The claim, under these circumstances, is that the defendant was bound to disclose to the plaintiff the change in his pecuniary circumstances since the prior conversation in August, above alluded to, and that he had no right to leave him under the erroneous impression occasioned by that conversation. It must be borne in mind that the declarations made by the defendant in that conversation were made in entire good faith, and that they were not made in any business transaction with the plaintiff, and that they had no reference to or connection with the release. The plaintiff, in executing the release, had no right to rely upon them.

The general rule is, that a party engaged in a business transaction with another can commit a legal fraud only by fraudulent misrepresentations of facts, or by such conduct or such artifice for a fraudulent purpose as will mislead the other party or throw him off from his guard, and thus cause him to omit inquiry or examination which he would otherwise make. A party buying or selling property, or executing instruments, must by inquiry or examination gain all the knowledge he desires. He cannot proceed blindly, omitting all inquiry and examination, and then complain that the

other party did not volunteer all the information he had. Such is the general rule. But there are exceptions to this rule. Where there is such a relation of trust and confidence between the parties that the one is under some legal or equitable obligation to give full information to the other party — information which the other party has a right, not merely *in foro conscientiæ*, but *juris et de jure*, to have, then the withholding of such information purposely may be a fraud. (Story's Eq. Jur., §§ 207 *et seq.*; *Hadley* v. *Clinton County Importing Co.*, 13 Ohio St. R., 502; *Bench* v. *Sheldon*, 14 Barb., 66; *Paul* v. *Hadley*, 23 id., 521.)

It is not always easy to define when this relation of trust and confidence exists; and no general rule can be formulated by which its existence can be known. It is sufficient for this case to say that it did not exist here. The defendant had no reason to make the disclosure which it is claimed he should have made, and the plaintiff had no right to expect it. The defendant had no reason to suppose that the plaintiff would be under the influence of the casual conversation which was had some two months before. And further, if the defendant thought upon the subject, he had no reason to suppose that if he stated all the facts within his knowledge, it would prevent the plaintiff from giving a discharge which he had agreed to give. While he would have stated that unexpectedly his share in the proceeds of the goods was much larger than $20,000, yet he would also have stated that he had contracted to sell the share for $20,000, and that the vendee claimed to hold him to the contract. That the claim was a serious one is shown by the fact that in January, 1869, Von Keller sued him, and in April, 1870, after a trial before a referee, sustained the contract and recovered a judgment for upwards of $100,000, which defendant was able to defeat finally only after a litigation of several years and a decision by this court. (50 N. Y., 108.) In October, 1868, the defendant could have informed the plaintiff what his interest in the proceeds of the goods was, subject to the chances of a litigation, but what it was actually worth no one could then have told.

Without therefore questioning the facts found by the court at Special Term, we are of opinion that there was error in the legal conclusion that plaintiff was entitled to any relief on account of fraud.

It is further clamed that the plaintiff ought to be entitled to relief on account of mistake. He testified that he would not have executed the release if he had known the defendant's financial condition. But as already shown, the defendant was in no way responsible for his ignorance, and was under no legal or equitable obligation to disclose the facts as to his pecuniary circumstances. The plaintiff could have learned the facts by inquiry of the defendant or his vendees. There was no mistake as to any fact intrinsic to the release. Plaintiff knew that the defendant had not been legally discharged from his liability, and that for the $5,000 he was to give him an absolute release ; and he gave him just such a release as he intended to. There was no mistake of any intrinsic fact essential to the contract or involved therein. The defendant's financial condition was an extrinsic fact, which might have influenced the plaintiff's action if he had known it. But ignorance of or mistake as to such a fact is not ground for affirmative equitable relief. The following illustrations of mistakes as to intrinsic facts essential to contracts, against which courts of equity will relieve, are found in the books. A. buys an estate of B. to which the latter is supposed to have an unquestionable title. It turns out, upon due investigation of the facts, that B. has no title ; in such a case, equity will relieve the purchaser and rescind the contract : *Bingham* v. *Bingham* (1 Vesey, 126). If a horse should be purchased, which is by both parties believed to be alive, but is, at the time, in fact dead, the purchaser would, upon the same ground, be released by rescinding the contract : *Allen* v. *Hammond* (11 Peters, 71). If a person should execute a release to another party upon the supposition, founded on a mistake, that a certain debt or annuity had been discharged, although both parties were innocent, the release would be set aside : *Hore* v. *Becher* (12 Simons, 465). If one should

execute a release so broad in its terms as to release his rights in property, of which he was wholly ignorant, and which was not in contemplation of the parties at the time the bargain for the release was made, a court of equity might either cancel the release or restrain its application as intended : (*Cholmondeley* v. *Clinton*, 2 Meriv., 352; *Dungers* v. *Angove*, 2 Ves., 304). On the other hand, if the vendee is in possession of facts which will materially enhance the price of the commodity and of which he knows the vendor to be ignorant, he is not bound to communicate those facts to the vendor, and the contract will be held valid : *Laidlaw* v. *Organ* (2 Wheat., 178). In such a case the facts unknown to the vendor are extrinsic to the contract and are not of its substance ; and hence there is no ground for the interference of a court of equity.

It is clear from these, and other illustrations which might be given, that a court of equity will not give relief in all cases of mistake. There are many extrinsic facts surrounding every business transaction which have an important bearing and influence upon its results. Some of them are generally unknown to one or both of the parties, and if known might have prevented the transaction. In such cases, if a court of equity could intervene and grant relief, because a party was mistaken as to such a fact which would have prevented him from entering into the transaction if he had known the truth, there would be such uncertainty and instability in contracts as to lead to much embarrassment. As to all such facts, a party must rely upon his own circumspection, examination and inquiry ; and if not imposed upon or defrauded, he must be held to his contracts. In such cases, equity will not stretch out its arm to protect those who suffer for the want of vigilance.

Judge STORY lays it down as a general rule " that mistake or ignorance of facts in parties is a proper subject of relief only when it constitutes a material ingredient in the contract of the parties, and disappoints their intention by a mutual error ; or where it is inconsistent with good faith,

and proceeds. from a violation of the obligations which are imposed by law upon the conscience of either party. But where each party is equally innocent, and there is no concealment of facts which the other party has a right to know, and no surprise or imposition exists, the mistake or ignorance, whether mutual or unilateral, is treated as laying no foundation for equitable interference." (Story's Eq. Jur., § 151.)

We are therefore of opinion that, upon the facts disclosed in the record before us, the plaintiff was not entitled to any relief, and the judgment must be reversed and a new trial granted, costs to abide event.

All concur, except MILLER, J., not voting.

Judgment reversed.