# AMASIAH H. BRADNER AND DANIEL LOWERY, RESPOND-ENTS, v. PETER O. STRANG, JOHN B. HOLLAND AND JOSEPH HOLLAND, APPELLANTS.

*Fraudulent representations — proof that reliance was placed upon them — liability of one partner for the fraudulent representations of his copartner — when his liability therefor is not affected by a discharge in bankruptcy.*

In 1875, and prior thereto, the plaintiffs, who were engaged as partners in buying wool and sheepskins at Rochester, had been accustomed to ship them to the defendants, who were carrying on business as partners in New York, and to draw drafts upon the defendants and send notes to them, to be negotiated and to take up notes of the plaintiffs previously discounted.

The plaintiffs brought this action to recover the damages occasioned by their having been induced to send to the defendants four promissory notes, by reason and by means of false and fraudulent representations of the defendant Strang, contained in letters written to the plaintiffs to the effect that the defendants' firm, of which he was a member, still held four promissory notes previously sent to them by the plaintiffs, whereas in fact they had then negotiated the said notes and received the proceeds thereof

Upon an appeal from a judgment in favor of the plaintiffs, *held*, that the plaintiffs were properly allowed upon the trial to testify that they sent the notes in reliance upon the statements contained in the letters.

That the relations of trust and confidence existing between the two firms were such as might well induce the plaintiffs to rely upon such statements, and that the jury were justified in finding that they did so rely upon them.

That Strang was properly allowed to testify that he had no fraudulent intent in writing the letters, but that it was proper to refuse to allow his codefendants to testify to the absence of any intent to defraud on their part, as the fact that the firm had received the proceeds of the discount of the notes rendered them liable for the fraudulent acts and representations, by means of which the notes were procured, without proof of any actual fraudulent intent on their part.

That they were chargeable with an express, positive fraud, within the meaning of the term "fraud," as used in the bankrupt act, and were not relieved from liability therefor by a discharge granted under said act.

APPEAL from a judgment in favor of the plaintiffs, entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

The action was brought to recover damages occasioned by the plaintiffs having been induced to send to the defendants their four promissory notes, by means of false and fraudulent representations,

to the effect that four other notes previously sent by the plaintiffs to the defendants were still held by them, whereas the defendants had then discounted the said notes and received the proceeds arising therefrom.

*George H. Forster*, for the appellants.

*William F. Cogswell*, for the respondents.

HARDIN, J. :

This action was brought to recover damages for fraudulently procuring from the plaintiffs, who were dealers in wool and sheep skins at Rochester, four promissory notes, which the defendants had discounted for their benefit, and upon which they realized the proceeds of such discount. The notes were negotiable and passed from the defendants into the hands of *bona fide* holders, and the plaintiffs were subsequently obliged to and did pay the same.

The defendants, who were copartners, were carrying on business in New York and they became and were the correspondents of the plaintiffs. The plaintiffs, in the course of their business, shipped to the defendants the wool and sheep skins, drew drafts on them, and also sent them notes for discount, and through a long course of business, covering numerous transactions, the parties exchanged credit.

Upon the 27th of March, 1875, one of the defendants wrote to the plaintiffs and in the letter stated a summary of the accounts between the parties, as the defendants claimed, and in that letter he said, viz. : " The notes we have received are all good, only we can't get money on them alone, and in the meantime we have paid about $30,000 of your notes, which these last were given to renew in part. We have $16,000 worth of notes *not used.* The actual balance of the account is about $40,000, to which is to be added your notes for $16,000." Upon the 2d day of April, 1875, another letter was written to the plaintiffs, in which the defendant states, viz. : " Your notes which have recently run off I might get renewed if you would send me, say four notes having about three months to run, and payable at the Metropolitan National Bank, New York. * * * I dare not offer the notes *we have* of yours, where the last run off were used, because the place where these notes are payable is at our office, and it would put them on inquiry at once."

. After these letters were received, and relying upon the statements therein contained, the plaintiffs sent to the defendants their four promissory notes. The defendants took these notes, and also procured them to be discounted, and the plaintiffs subsequently paid them. Upon the trial each of the plaintiffs testified that they relied upon the statements quoted from the letters. We think it was entirely competent to prove such reliance upon the statements as true by the plaintiffs. The defendants held relations of confidence towards the plaintiffs, and were by such statements enabled to induce the plaintiffs to act thereon, as the evidence amply warranted the jury in finding. The case of *Dambman* v. *Schulting* (75 N. Y., 55), cited by the appellants, contains nothing inconsistent with such doctrine.

The representations before us, the jury were authorized to find, were such as were calculated to and did mislead the plaintiffs. The relations of trust and confidence existing between the two firms were such as might well induce the plaintiffs to *rely* upon such representations. (*Bench* v. *Sheldon,* 14 Barb., 66 ; *Paul* v. *Hadley,* 23 id., 521 ; Story's Eq., § 207 ; 75 N. Y., *supra.*)

The substantial fact stated in the letters, in effect, was that the notes had not been discounted, and therefore their proceeds applied upon the account, and because of that fact the plaintiffs might as business men yield to the solicitation for further notes, to be used in procuring funds to apply towards reducing their account with the defendants.

Suffice it to say the evidence authorized the jury so to find, as their verdict indicates they did find. Upon the trial there was an offer to show by the defendant Holland that there was not any intent to defraud in sending the letter. But it already appeared that the letters were written by their partner and codefendant Strang, and the evidence was therefore excluded. The fraud, if any was perpetrated by Strang, and it was not a defense in his mouth that the copartners did not intend a fraud, nor was it a defense to them to show that their copartner made the representations in the course of the firm business, without their action or participation therein. (*Bliss* v. *Matteson,* 52 Barb., 345 ; *Hawkins* v. *Appleby,* 2 Sandf., 421.)

In the case of *Stitt* v. *Little* (63 N. Y., 435) it was held that a

knowledge of the falsity of the representation made, or that it was made with intent to deceive, must be shown and found by the jury. But in the case before us it is impossible to conceive that the absence of an actual intent to deceive in the breast of Hollands would be a defense to Strang, or a defense to them.

The Hollands being partners are chargeable with the affirmative acts and declarations of Strang by means of which their firm received the notes, procured them to be discounted, and enjoyed the proceeds thereof. Hence the rulings upon the trial allowing Strang to testify that he had no fraudulent intent in writing the letters was proper, and it was equally proper to exclude the evidence of the Hollands, in respect to their having no such intent. Indeed, the court assumed that they possessed no such actual intent, and were chargeable only upon the principle that Strang's acts and declarations were those of their agent, as they were his copartners and participants in the fruits of the alleged fraud. (52 Barb., 345 ; 2 Sandf., 421.)

The defendants were adjudicated bankrupts July 3, 1875, and discharged June 1, 1877, and such discharge was set up and insisted upon at the trial. It was overruled by the court, and the defendants Hollands now insist that they were discharged from the claim made herein against them in common with Strang their copartner. It was held (*Hennequin* v. *Clews*, 77 N. Y., 427) that the term "fraud," as used in the bankrupt act declaring what debts should not be discharged, relates to affirmative, express fraud, and not to fraud by implication. In *Neal* v. *Clark* (95 U. S., 704) it was construed to mean "*positive* fraud, or fraud in fact," involving moral turpitude or intentional wrong. We think it very clear that under the principles of these cases, Strang was not discharged in bankruptcy from the claim made against him in this action. (*Libbey* v. *Strasburger*, 14 Hun, 120 ; *Talcott* v. *Harris*, 18 id., 567 ; *Argall* v. *Jacobs*, 21 id., 115.)

Though his act is the one which casts a liability upon the Hollands, we think as he being their partner, and as such their agent, that they through him are chargeable with an express, positive fraud, and they in receiving the fruits of his fraudulent act adopted the act which worked a fraud upon the plaintiffs.

The discharges in bankruptcy were unavailing to the defendants, or either of them. The proofs given by the plaintiffs established

the false representations, by means of which they were induced to part with their notes to the defendants; that the defendants procured them to be discounted, and received the avails thereof, and that the plaintiffs were obliged to pay and take up the notes, and the extent of the damages sustained by the plaintiffs, and we see no exceptions in the course of the trial which should lead us to disturb the verdict. (Section 1003 of Code of Civil Procedure.)

The order and judgment must be affirmed.

TALCOTT, P. J., and RUMSEY, J., concurred.

Judgment and order affirmed.