**NOVED REALTY CORPORATION, Appellant, *v.* A. A. P. Co., INC., Respondent.**

First Department, February 11, 1937.

*David Steckler* of counsel [*Israel Hoffman* with him on the brief], for the appellant.

*Albert A. Raphael* of counsel [*Galleri, Hilborn & Raphael,* attorneys], for the respondent.

UNTERMYER, J.   The occurrences which require consideration on this appeal involve four corporations and two sets of transactions — the first between Nyamco Associates, Inc., and Vito Company; the second between the defendant and the plaintiff.   Throughout these transactions the same person was president of both Vito Company and the defendant, and was also in control of both.

On June 20, 1935, Vito Company entered into a contract with Nyamco to purchase a junior participation of $95,400 in a first mortgage of $455,400 on premises in the city of New York free of all liens and incumbrances superior to the first mortgage, except taxes and accrued interest on the senior participation.   The date for closing was to be July 22, 1935.   A few days previous to July twenty-second the Vito Company learned from its title report of the existence of a conditional bill of sale recorded by the A. B. See Elevator Company, on which there was unpaid approximately $5,500.   As the result of conversations between the attorney for the Vito Company and the attorney for the elevator company it was ascertained that the balance due on the conditional sale agreement could be settled for $3,000.   At the closing on July twenty-second Vito Company, represented by its president, demanded that Nyamco discharge the lien in accordance with the terms of the contract of sale.   Nyamco, however, refused to concede that the conditional bill of sale was a lien superior to the first mortgage and thereupon an agreement was executed whereby $5,500 of the purchase price was to be held in escrow by Nyamco " pending an investigation as to the liability, if any, as between the

seller and the purchaser with reference to the balance due under a conditional bill of sale agreement covering the installation of elevators in said premises, in which A. B. See Elevator Co., Inc., is the conditional vendor." It was further provided, " Should it be determined that the lien of the A. B. See Elevator Co., Inc., by virtue of the said conditional bill of sale is prior to the lien of the first mortgage on said premises, the seller agrees to satisfy the lien of such conditional bill out of the moneys held by the seller in escrow, provided Mr. Justice FRANKENTHALER shall formally or informally approve the same." The reference to approval of such a payment by the court was caused by the fact that Nyamco was then under the control of the Superintendent of Insurance, acting under the direction of the court.

Remembering that there was thus held in escrow by Nyamco the sum of $5,500 wherewith to satisfy the conditional bill of sale if it were determined to be superior to the lien of the first mortgage, we turn now to a consideration of the transaction between the plaintiff and the defendant, which was likewise conducted by the defendant's president. The plaintiff was the owner of a second mortgage of $65,000 on the same premises which secured the first mortgage sold by Nyamco to Vito Company. On August 8, 1935, the defendant entered into an agreement with the plaintiff to purchase that mortgage for $20,000. Although it is conceded that on that date the defendant knew of the existence of the conditional bill of sale of the A. B. See Elevator Company, the contract of sale stipulated for the sale of the second mortgage free and clear of chattel mortgages and conditional bills of sale. It provided further for closing of title on August twenty-eighth, " but the closing shall be held earlier if the purchaser gives to * * * the attorney for the seller forty-eight hours' written notice of its intention to close earlier, in which event the closing shall be at the time specified in the said notice." In connection with this transaction the defendant also procured a title report which was delivered on the morning of August sixteenth and which, of course, disclosed the conditional bill of sale held by the A. B. See Elevator Company. Thereupon the defendant's president telephoned to the attorney for the plaintiff and, quoting his testimony, the following conversation ensued: " I told him that my attorneys had received the title report and that I was advised that in said report there was an exception, that there was a conditional bill of sale that was a prior obligation to this mortgage which I had under contract to purchase through the A. A. P. Company, Inc., and that I wanted to know what he was to do about it. * * * He seemed to be surprised over the phone, and then he asked me — I believe I told him what the

amount was — he asked me the amount of that conditional bill of sale and I then told him it was around $5,500, and after a moment, and after a few words, I think he asked me, ' Will you take $1,500?' And I told him that I would not. I then told him that to the best of my recollection, this might be settled for about $3,000, unless things would change meanwhile, and that if he made that at $3,000, I would take the chance and close this deal with him. I would take the chance if I should have to pay more. * * * He just told me that he would call up his principal and that he would let me know; so that in about half an hour I received a telephone call from him at your office, and to the best of my recollection, he indicated that his principal was favorable to reducing the price of this mortgage by $3,000, and that they were coming over to the office at about 3 o'clock."

On the same afternoon the plaintiff's attorney, satisfied that the conditional sale agreement was superior to the lien of the mortgage, so advised the plaintiff, which thereupon consented to reduce the purchase price from $20,000 to $17,000, thus relinquishing $3,000 on account of the existence of the agreement of conditional sale. It was conceded by the defendant that throughout the negotiations it never disclosed to the plaintiff the existence of the agreement between Vito Company and Nyamco, whereby the full amount necessary to satisfy the conditional bill of sale was held in escrow. The defendant's president testified: " Q. You did not mention to him anything about that $5,500 that was on deposit with the Insurance Department, did you? A. No, there were a lot of things that I did not tell him that did not concern him."

On October 23, 1935, upon petition of the Superintendent of Insurance followed by the approval of the court, Nyamco, out of the fund held in escrow, paid to A. B. See Elevator Company the sum of $3,000 to discharge the balance due under the conditional sale agreement. Obviously, when the conditional sale agreement was thus discharged by Nyamco the defendant remained in possession of the $3,000 by which the purchase price of the second mortgage had been reduced on account of the existence of the same incumbrance. Upon ascertaining these facts, the plaintiff demanded repayment of that sum, and on refusal, this action was brought both for money had and received and for fraud. The trial court directed judgment in favor of the defendant, stating that in the absence of a trust relationship the " defendant had a right to make the best bargain it could as long as it used no fraud to accomplish the result. They were dealing at arm's length in a business transaction and there was no misrepresentation of facts

or deception." We think the charge of fraud was established by the uncontradicted proof.

We agree with the defendant that the relation of the parties was merely that of buyer and seller not affected by any fiduciary obligations. Conceding this, there are limits beyond which parties even in that relation may not go in the concealment of material facts. We think that limit was reached and passed. For the purposes of the present case, we need not hold that buyer and seller are under a duty to disclose all collateral circumstances known to one and unknown to the other affecting the value of the subject-matter of the sale (*Nichols* v. *Pinner*, 18 N. Y. 295; *People's Bank of City of New York* v. *Bogart*, 81 id. 101; *Burt* v. *Mason*, 97 Mich. 127; 56 N. W. 365; *Guaranty Safe Deposit & Trust Co.* v. *Liebold*, 207 Penn. St. 399; 56 A. 951), although there are decisions having a tendency to support that view (*Laidlaw* v. *Organ*, 2 Wheat. 178; *Coral Gables, Inc.*, v. *Mayer*, 241 App. Div. 340; 246 id. 518; affd., 270 N. Y. 670; *Davis* v. *Reisinger*, 120 App. Div. 766). In the present case, by asserting the lien (if we so describe it) as a justification for the reduction of the purchase price by an equivalent amount and at the same time concealing the existence of the escrow agreement by which it was secured, the defendant must have intended to create the impression that it would be necessary to discharge the lien at its own expense. The distinction between the sale of property without disclosing that it is incumbered and the assertion of an incumbrance which is known to be bonded or secured as justifying a reduction in the purchase price, is almost imperceptible. (*Donovan* v. *Aeolian Co.*, 270 N. Y. 267; *Bench* v. *Sheldon*, 14 Barb. 66; *Files* v. *Rankin*, 153 Fed. 537; 1 Black on Rescission and Cancellation, § 63; 26 C. J. § 17.) In either case a false impression is created by the statement of a partial truth and the suppression of facts which would materially qualify the statement made. This principle has illustration in the present case. The paramount consideration to the parties was not the existence of a conditional bill of sale but whether the purchaser of the second mortgage would be subjected to expense in satisfying it. By referring to the lien as necessitating an expenditure of at least $3,000 and avoiding reference to the fund in escrow out of which it was payable, the defendant succeeded in inducing the belief that the lien could only be discharged at its own expense. (Compare *Downey* v. *Finucane*, 205 N. Y. 251.) This constituted a fraud upon the plaintiff. The rule on this subject was accurately stated in *Stewart* v. *Wyoming Ranche Co.* (128 U. S. 383), as follows: " In an action of deceit, it is true that silence as to a material fact is not necessarily, as matter of law, equivalent to a false representation. But mere silence is

quite different from concealment; *aliud est tacere, aliud celare;* a suppression of the truth may amount to a suggestion of falsehood; and if, with intent to deceive, either party to a contract of sale conceals or suppresses a material fact which he is in good faith bound to disclose, this is evidence of and equivalent to a false representation, because the concealment or suppression is in effect a representation that what is disclosed is the whole truth. The gist of the action is fraudulently producing a false impression upon the mind of the other party; and if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff."

By a partial revelation of the truth the defendant created the false impression that the conditional bill of sale would cause the purchaser of the second mortgage an expense of $3,000. Indeed, the defendant did not leave this to inference alone, for its president said: " I would take the chance if I should have to pay more." This could only mean that it would be necessary for the defendant to pay $3,000, and perhaps more, to discharge the lien, although at that moment he knew almost to a certainty that it would never be necessary to make any payment for that purpose because he knew the lien to be secured. The extent of the security or the conditions under which it was held are not decisive. What is decisive is that there was security which, under specified conditions, was applicable to the satisfaction of the lien. The defendant could not fail to know that the existence of the escrow agreement securing payment of the lien, known to him but unknown to the plaintiff, would influence the negotiations in which it was seeking to secure an equivalent allowance on the purchase price. The suppression of that fact, coupled with the impression, consciously created, that the defendant would be required to satisfy the lien at its own expense, exceeded the bounds which separate shrewd trading from the domain of fraud.

The judgment should be reversed, with costs, and judgment directed in favor of the plaintiff for the relief demanded in the complaint, with costs.

MARTIN, P. J., MCAVOY, O'MALLEY and GLENNON, JJ., concur.

Judgment unanimously reversed, with costs, and judgment directed in favor of the plaintiff for the relief demanded in the complaint, with costs.