In the Matter of the Assignment of ISRAEL T. POTTER to BERTRAND CLOVER for the Benefit of Creditors.

(Decided June 25th, 1883.)

A creditor who receives a percentage of his claim from his debtor's assignee for benefit of creditors, and in consideration thereof executes an assignment of the balance to such assignee, which assignment is taken by the latter for the benefit of the debtor, will not be permitted to avoid his assignment by showing that he executed it under the impression that it was a mere receipt on account, he not being able to read the paper owing to defective vision and the want of glasses, there being no fraud nor false representations on the part of the assignor or the assignee, nor any act done to induce him to sign, and it appearing that similar assignments were made and percentages received by other creditors under an arrangement with the assignor after an attempted composition at that rate with all the creditors had failed, the original proposed composition deed having however been signed by the creditor in question, with others.

A court of equity will relieve parties from a mutual mistake of fact ; but not when ignorance or mistake is confined to one party, and no unconscientious advantage is taken by fraud or concealment by the other.

Even if the creditor had the right to avoid his assignment of the balance of his claim, he would have to refund the sum received.

The principles that govern transactions between trustees and *cestuis que trust* do not apply to the transaction, because the assignee did not secure to himself any benefit by the assignment of the claim, but took it for the sole benefit of the assignor. As, however, there was no definite finding of fact to that effect, the assignee was required to file a stipulation that such assignment was taken in behoof of and for the assignor and his estate.

Where a party who has filed exceptions to a referee's report afterwards moves to confirm it, he must be held to support it as correct in fact and conclusion.

APPLICATION to confirm the report of a referee upon a trial of a disputed claim under a general assignment for the benefit of creditors.

The claim was made by William G. Ellsworth, as a creditor of the assignor, Israel T. Potter, who had deceased since making the assignment, and it was disputed by the assignee, and also by Sarah L. Potter, the administratrix of the assignor. The referee found in favor of the claim, and the creditor thereupon made this application to confirm the report of the referee. The facts found by the referee are stated in the following opinion, rendered at Special Term, October 27th, 1882.

*Nelson Smith*, for the creditor.

*Dewitt C. Brown*, for the assignee.

*Waldorf H. Phillips*, for the administratrix of the assignor.

VAN BRUNT, J.—This is a motion to confirm the referee's report made upon a claim presented by W. G. Ellsworth as a creditor of Israel T. Potter, deceased, who had made an assignment to one Bertrand Clover.

The referee finds that on December 5th, 1876, the said Israel T. Potter made an assignment for the benefit of creditors to Clover; that on the 21st of December, 1876, a compromise deed was drawn up and executed by many of Potter's creditors,

Matter of Potter.

whereby they agreed to accept 40 cents on the dollar as and in full settlement of their claims. There was a provision in said deed, however, that the same should not be binding except it should be signed by all the creditors of said Potter. This composition deed was first signed on behalf of Mr. Ellsworth by C. G. Hall, his attorney, and afterwards by Ellsworth himself. Many of the creditors having refused to sign the composition deed, a suggestion was made by the assignee and assented to by many of the creditors, providing for the payment of 40 per cent. of their claims, and the assignment of such claims to Clover in his individual capacity—the evidence showing that such assignment was to be for the benefit of Israel T. Potter. Some 150 or 200 creditors made such assignments to Clover and received their 40 per cent.

On the 23d of January, 1877, $1,200 was paid to W. G. Ellsworth, being 40 per cent. of the amount of his claim, and on the 24th of January, Ellsworth executed a paper similar to that which had been executed by all the other creditors who had received the 40 per cent., by which he acknowledged the receipt of the 40 per cent. of his claim, and which he had agreed to accept under the composition deed theretofore signed by him as in full of said claim, and in consideration of such sum he assigned to Clover all his right, title and interest in said claim against Potter.

The referee further finds that Ellsworth executed this instrument in mistake, supposing it to be a mere receipt or acknowledgment that he had been paid $1,200 on account of his claim; that its contents were never read or explained to him, nor could he then read or understand it to be other than such supposed receipt, as he did not have his glasses with him on that day and his eyesight was defective; that Clover did not pay Ellsworth under the composition deed and would not have given him the money as a compromise merely, and during the reference offered to cancel the assignment of his claim if Mr. Ellsworth would restore the $1,200, which offer Mr. Ellsworth did not accept.

The referee further finds at the request of the counsel for the assignee that neither Clover nor Genung, who actually made

the payment, practiced any fraud upon Ellsworth in procuring his signature to the assignment of his claim.

The referee was requested to find the following fact :— " Did not Ellsworth have full opportunity to examine the assignment before executing it, and did not, in fact, Ellsworth examine the assignment before he executed it, and did he have his glasses with him that day ?" and in answer to these requests the referee finds as follows : " I find the defective eyesight prevented a full opportunity of examination ; that Mr. Ellsworth did not examine this instrument so as to become aware of its actual contents."

The referee further finds that Genung, who made the payment, did not know, nor did Ellsworth inform him of the fact, that he had not his glasses and could not examine the paper ; that the assignment executed by Ellsworth was precisely like that executed by nearly all the creditors, but that no creditor got 40 per cent. upon the amount of his debt without executing an assignment of his claim.

The referee further finds that after the refusal of some of the creditors to sign the composition deed, this method of settlement was the one adopted, and that at the time of the execution of this assignment, Clover and Genung supposed that Ellsworth had consented to execute an assignment of his debt, and that Clover would not have paid Ellsworth the $1,200 if he had refused to execute the assignment of his claim.

Upon these facts, the referee finds that Ellsworth is not bound by the assignment which he has made, because of the relation of trust which existed between Ellsworth, the creditor, and Clover, the assignee.

In coming to this conclusion, I am of the opinion that the referee has entirely mistaken the rule of law applicable to the facts of the case.

It is true that a trustee cannot deal with his *cestui que trust* for his own benefit. This rule is founded upon the relation of trust which is supposed to exist between a trustee and his *cestui que trust*. That the facts proven bring this case within the rule above named governing the relations of trust between an assignee and the creditor of his assignor, I fail to

Matter of Potter.

sec. There are no confidential relations between an assignee appointed by the assignor to wind up his estate and divide the proceeds among his creditors. It is undoubtedly true that, if the assignee makes any representations in regard to the condition of the estate, in regard to the probabilities of the dividend which the estate will declare, or any facts of that description, he is held to the strictest accountability in case of any misstatement or misrepresentation. But that a composition deed or a settlement of the claims of creditors is to be held void merely because a creditor has signed at the request of the assignee has never yet been established.

It is true that the assignments in question were taken to Clover individually, but the evidence clearly shows in the case that such assignments were taken for the benefit of Potter, the assignor, and that they were not for the individual benefit in any respect of the assignee. It was not claimed, and has not been claimed upon the argument of this motion, that Clover was to derive any individual benefit from such assignment, but that he had charged himself only with the amount of money which he had actually paid for the purpose of procuring such assignments. He was not dealing with the creditors or with the trust estate for his own benefit. He was endeavoring to carry out a composition deed which Mr. Ellsworth had signed, and which it was impossible to complete because of the refusal of some of the creditors to sign it. A composition deed is always supposed to reserve some benefit to the debtor, and the carrying out of this composition deed by the means which were adopted of paying a dividend and taking assignments of the claims was undoubtedly understood by the creditors to be in some way beneficial to the assignor.

In fact the policy of the assignment law is to further compositions, because it provides that, in the case of a composition deed, the creditor who refuses to sign the composition deed shall only receive so much of the estate as he would have received had none of the creditors signed the composition deed and the whole estate had been divided amongst all the creditors.

The finding of the referee in this case that there was no fraud; that Ellsworth could have examined this paper if he

had chosen to do so; that Clover and Genung supposed that he had done so, and that they would not have paid the money had he not executed the assignment, shows that if there has been any negligence or any fault it is upon the part of Mr. Ellsworth, and that he now cannot come in and claim to be relieved from the results of his own negligence. If he had asked that the receipt and assignment be read over to him he would have been aware of their contents. He was in the habit of consulting with Mr. Potter, the assignor; he was his intimate friend; this process of settlement had undoubtedly been the subject of discussion among the creditors of Potter; and Clover had the right to assume that Ellsworth was acquainted with the proceedings which were being taken to relieve Potter from the claims of his various creditors.

It is not necessary that I should discuss this branch of the case further, because the referee seems to place his decision entirely upon the relation of trust existing between Clover, as assignee, and Ellsworth, as creditor.

As I have already said, I fail to see that any such relation of trust exists in reference to a compromise with the assignor of his debts. If the assignee makes any representations in regard to the condition of the estate for the purpose of inducing a creditor to sign a composition deed, he should be held to the strictest accountability, because of his superior knowledge; but there is no rule which would render void a composition deed, or an assignment of a claim to the assignee for the benefit of the assignor, unless there was some fraud upon the part of the assignee. There may be a grave question of doubt as to whether the referee had the right upon this order of reference to try the validity of this assignment, but as his right has not been questioned by the counsel, it is not necessary that I should discuss that proposition. I am of the opinion, therefore, that the exception to the finding of the referee, that Ellsworth was a creditor, should be sustained.

An order in accordance with this decision was entered, and from the order Ellsworth appealed to the General Term, at which the following opinion was rendered, June 25th, 1883.

Matter of Potter.

BEACH, J.—The appellant moved at Special Term to confirm the referee's report, and, notwithstanding he filed exceptions, must be held to support it as correct in both fact and conclusion. The learned justice in the court below was not called upon to review the testimony in order to justify the legal conclusion, when the facts found called for an opposite result. Had the appellant desired to pursue such a course he should have filed such exceptions and moved to set aside the report. If the judgment was not upheld by the facts, it was equally prejudicial to him as if the referee had based an unsatisfactory legal conclusion upon facts in accord with his contention. In this court, the review must be had upon the facts found by the referee, especially as those most important and controlling seem justified by the proofs.

The finding that no fraud was practiced in procuring appellant's signature to the assignment of his claim negatives his contention of its having been obtained by false representations and concealment. It is found that the appellant executed the instrument under a mistake, supposing it to be a receipt for a sum paid on account of his claim, and that it was not read over or explained to him, nor could he then read it, having defective eyesight and being without glasses. The question thus arises whether these facts, in connection with the absence of any fraud by the assignee, called for a conclusion different from the one reached by the court at Special Term. I am of the opinion they do not. The suppositions entertained by the appellant when he signed the paper are not material. He was of full age, and in complete mental vigor, the instrument before him was legible, and he had abundant opportunity to read it and act intelligently. No compulsion, misrepresentation or request for hurried action, was used to induce him to sign, and doing so voluntarily, even if temporarily unable to read, precludes him from asking relief from the effect of his act. A court of equity relieves parties from a mutual mistake of fact, but not when ignorance or mistake is confined to one party, and no unconscientious advantage is taken by fraud or concealment by the other (*Moran* v. *McLarty*, 75 N. Y. 25; *Paine* v. *Jones*, Id. 593; *Jackson* v. *Andrews*, 59 N. Y.

244). Even if the appellant had the right to avoid the assignment of his claim to the assignee individually, from ignorance of its contents, he would have to refund the sum received. Clover, the assignee, undoubtedly intended by the payment to secure an assignment of the claim, and his error is equally potent to call for repayment as appellant's to avoid the instrument.

The final question, whether or not the evidence calls for an application of the principles regulating dealings between trustee and *cestui que trust*, if not substantially disposed of by the foregoing conclusions, may be settled from a brief consideration of the facts. The appellant signed the composition deed, and agreed to receive forty per cent. in full satisfaction of his claim. No pretense is made that in so doing he acted in ignorance or by mistake. The referee finds the assignee's action relative to the assignment by appellant to him individually free from fraud, and the proofs tend to show the absence of any intent or desire for personal profit. The assignee asks no credit in his accounting beyond the amount actually paid out. The instrument given must be considered in the light of these facts. It is a receipt to Bertrand Clover for $1,200, being forty per cent. of appellant's claim against Israel T. Potter, which he agreed to accept under composition deed theretofore signed by him as in full of said claim. I think the appellant thereby waived the condition in the composition deed, which required the signing by all creditors, and became bound by his prior signature to that instrument.

The succeeding clause, assigning to Bertrand Clover all his right, title and interest in and to all sums of money now due or to grow due upon his claim against the assignor, is of little effect, because Clover, as assignee, seeks no personal gain therefrom. So far as the paper indicates, the money paid belonged to Clover, and independent of his being assignee would simply amount to a purchase of the claim by a third party for a less sum than its total amount. That this third person was the assignee works no change, because he seeks no advantage from the purchase, and any benefit accrues to the insolvent assignor. In my opinion, the first clause of the

Matter of Darrow.

paper is controlling, and renders the record containing the assignment of so little utility as not to furnish a foundation for the question so prominently considered by the referee regarding action by a trustee. In the absence of a definite finding, there appears to be some uncertainty, upon the evidence, as to whether or not the assignee seeks personal benefit from the assignment he took. In case a stipulation shall be given by him that the assignment was taken on behalf of and for the benefit of the assignor Potter and his estate, the order appealed from should be affirmed, without costs of this appeal, and in case it be not given within five days after this decision, the proceedings should be remitted to the referee for a finding upon that question.

CHARLES P. DALY, Ch. J., and J. F. DALY, J., concurred.

Order accordingly.*

---

* The order entered upon this decision was affirmed by the Court of Appeals, January, 1884.