## VAIL v. REYNOLDS.

*(Supreme Court, Special Term, New York County. June 1, 1888.)*

EQUITY—REFORMATION OF CONTRACTS—APPEAL—BONDS—MISTAKE IN SIGNING.

The sureties on the bail-bond given by defendant, who had also become his sureties on appeal to the court of appeals, sought to be released from the latter undertaking on the ground that they had signed it without examining its contents, having been led by a remark of defendant's counsel to believe that it was an undertaking for the costs of the courts of appeals, and, in case of affirmance there, for the defendant's surrender on an execution. *Held*, that this did not present a case of mutual mistake of a material fact, on the ground of which a reformation of the instrument might be ordered.[1]

At chambers, Motion to cancel an undertaking.

Action by Elizabeth D. Vail against William M. Reynolds, in which the defendant was held upon an order of arrest, and George W. Quintard and Jessie Reynolds went on the bail-bond for his release. Judgment was recovered against him for about $30,000. He gave no undertaking on appeal to the general term. Mrs. Reynolds and Quintard, who were sureties on appeal to the court of appeals, sought to be released, claiming that they signed the undertaking under a misapprehension as to its contents.

*Goodrich, Deady & Goodrich,* for respondent. *Carter, Hornblower & Byrne,* for sureties. *Richards & Brown,* for defendant.

BARRETT, J. The sureties ask the court to relieve them from their contract, in substance, because they signed it without examination. They tell us that they intended to sign a nondescript undertaking for the costs of the court of appeals, and, in case of affirmance there, for the defendant's surrender on an execution against his person; in other words, a mixture of a bail-bond with an undertaking to perfect the appeal. These sureties had previously executed a bail undertaking, and the mistake claimed is that they supposed, from a remark of the defendant's attorney, that the undertaking on appeal was similiar to the bail undertaking, with the addition of the costs of the appellate court. There was no fraud or misrepresentation, no attempt to deceive them in any way. The defendant was the husband of one of the

---

[1] As to the mistakes against which equity will relieve, and the proof necessary to obtain a reformation of a written instrument, see Fehlberg v. Cosine, (R. I.) 13 Atl. Rep. 110, and note; Frederick v. Henderson, (Mo.) 7 S. W. Rep. 186; Rosseau v. Lambert, (Ky.) Id. 923; Clark v. Roots, (Ark.) 6 S. W. Rep. 728; Kornegay v. Everett, (N. C.) 5 S. E. Rep. 418.

sureties. The other surety was fully indemnified by his co-surety. The defendant's attorney drew the undertaking, and submitted it to the sureties for execution. He drew it advisedly, for the express purpose of obtaining speedily a stay of execution. The sureties had ample opportunity for inspection, and they not only signed the instrument, but formally acknowledged its execution, and verified the usual affidavit of justification. It was then submitted, with Mrs. Reynold's bond of indemnity, to Mr. Quintard's counsel, Mr. Cummings, and, upon the latter's approval, it was submitted to the plaintiff's attorneys, who indorsed their approval, and thereupon it was duly filed. Upon these facts it is quite clear that no case is made for reformation, as there is no pretense of mutual mistake. The plaintiff certainly received the precise contract which accorded with his understanding; and simultaneous with its delivery, of which filing is the equivalent, the law took from him and gave to the defendant the consideration therefor, namely, the perfected appeal and the stay of proceedings. It is equally clear that no case is made out for rescission. The evidence falls far short of establishing such a mistake of fact as would warrant cancellation by a court of equity. The rule requires the proof of such mistake to be clear, direct, and positive. *Marvin* v. *Bennett*, 26 Wend. 168; *Lyman* v. *Insurance Co.*, 17 Johns. 373. Here the testimony, even as to the attorney's characterization of the instrument, is loose, contradictory, and suspicious. The undertaking was, doubtless, prepared and executed upon the supposition that these sureties were already liable on the appeal to the general term. It may be that, if the attorney had acquainted himself with the true situation, he would not have deemed it important to secure a stay of proceedings. It may also be that, if the sureties had been well advised, they would have limited their obligation to the perfecting of the appeal. But, however mistaken his and their view of the outside situation, there was no such mistake with regard to the instrument itself as would justify its entire cancellation. It could not well be rescinded *in toto*, for part of the obligation was entered into without pretense of mistake, namely, as to the costs. And, even as to the rest, reformation to a bail undertaking is all that is claimed, from the avowed understanding of the sureties.

But apart from this, and even if it were clearly established that the sureties acted blindly upon the attorney's assurance that the undertaking was precisely similar to that which they had previously executed, the case for rescission would not be bettered. The mistake of fact must at least be material; that is, it must constitute a material ingredient in the contract of the parties, or have some relation to the bargain itself. The element of unconscientious advantage taken by one party of the other's mistake is at the bottom of the rule. Consequently extrinsic facts, with which the opposite party has no connection,—facts which, if disclosed, would not enter into the negotiation at all,—are not in a legal sense material. It was explicitly held in *Dambmann* v. *Schulting*, 75 N. Y. 55, that ignorance of a fact extrinsic and not essential to a contract, but which, if known, might have influenced the action of a party to the contract, is not such a mistake as will authorize equitable relief. The present case is to be treated precisely as though the sureties, with the executed undertaking in their hands, had gone to the plaintiff, and bargained for the perfected appeal and stay of proceedings. The only mistake of fact, in that aspect of the case, was their ignorance of the contents of the contract tendered to the plaintiff,—a contract which they had signed with their eyes open, and without fraudulent inducement. Parties under such circumstances cannot be permitted to plead ignorance of the character and quality of their own acts. There would be no security in undertakings filed pursuant to the statute if sureties could thus escape liability. 1 Story, Eq. Jur. § 146, says: "It is not sufficient in all cases to give the party relief that the fact is material; but it must be such as he could not by reasonable diligence get knowledge of when he was put upon inquiry. For if, by such reasonable diligence,

he could have obtained knowledge of the fact, equity will not relieve him, since that would be to encourage culpable negligence." The language of MILLER, J., in *Moran* v. *McLarty*, 75 N. Y. 29, is equally applicable: "The plaintiff states that he only read it [the assignment containing the guaranty which the plaintiff declared he never intended to give] over partially, but, with full opportunity to examine its contents, he failed to observe the guaranty which was contained in the same, and, after this, he voluntarily signed and executed the assignment. It was his own fault and negligence that he did not notice the guaranty, and for this the defendant, or her attorney who transacted the business on her behalf, were not responsible. A careful attention on the part of the plaintiff at the time would have avoided the difficulty, and relieved him from liability." And see *In re Potter*, 10 Daly, 133; *Schmidt* v. *Herfurth*, 5 Rob. (N. Y.) 124; *Lanier* v. *Wyman*, Id. 147; *Brennan* v. *Arstein*, 42 N. Y. Super. Ct. 375; *Lister* v. *Windmuller*, 52 N. Y. Super. Ct. 417.

The cases at law with respect to money paid under mistake of fact (such as *Kelly* v. *Solari*, 9 Mees. & W. 54, and *Bank* v. *Eltinge*, 40 N. Y. 391) are entirely inapplicable. They hold, in substance, that, where money not actually owing is paid by mistake, *assumpsit* will lie upon the implied promise to return it. There negligence has nothing to do with the question. The action at law lies simply because one man has in his possession another man's money, and it would be against conscience to permit its retention. Clearly, that rule has no bearing upon the present facts, nor upon the equitable rules which govern the rescission of written instruments. Such rescission in equity, apart from fraud, proceeds, as we have seen, only upon clear and convincing proof of mistake with respect to a material fact, and the latter cannot be predicated of the surety's inattention to the contents of an instrument which he has signed, and, in legal intendment, delivered, where such inattention was not induced by the recipient of the instrument, (for a statutory consideration,) or by any one acting for him. But for the case of *O'Sullivan* v. *Connor*, 22 Hun, 137, I should have doubted the power of the court, on motion, to cancel an undertaking for such reasons as are assigned in these papers. We have, undoubtedly, ample power to amend an undertaking, with the consent of the sureties, in furtherance of justice, or to permit the filing of a new undertaking, or otherwise to grant relief against mistake in the conduct of the action or appeal. That, however, is an entirely different matter from canceling the contract upon distinct issues of fact and law, as between the plaintiff and the sureties. In view of this decision, however, which, under the theory of amendment, really canceled the material part of the undertaking, I have felt bound to examine the case quite as though it were before me at special term on bill filed; and the result is that the motion, upon its merits, should be denied, with costs.